THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general,* v. THE CITY OF LEAVENWORTH.

No. 15,284   (90 Pac. 237.)

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Res Judicata.* A judgment is ordinarily conclusive between the parties upon all questions directly involved in the issue and necessarily determined by· it, but a judgment is not an estoppel as to facts which did not occur until after the judgment was rendered and which were not involved in the suit in which it was rendered.

2. ——— *Limitation of the Estoppel.* The fact that a party may have obtained a judgment against another does not estop him subsequently to ask for the same kind of relief against the same party, if conditions have changed and new facts and elements are brought in.

3. ——— *Quo Warranto—Cities and City Officers.* A judgment in *quo warranto* in favor of the state ousting a city from the unauthorized exercise ·of corporate power by its officers does not bar a like action against the same city, brought many years afterward, based on later abuses of power of the same character by the officers then in control of the city government.

Original proceeding in *quo warranto.* Opinion filed May 11, 1907. Judgment for plaintiff.

*Fred S. Jackson,* attorney-general, for The State.
*F. P. Fitzwilliam,* for defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in *quo warranto,* brought by the state on the relation of the attorney-general against the city of Leavenworth to oust it from the exercise of assumed and unwarranted corporate powers and privileges. The petition contains two counts, in one of which it is alleged that for two years last past the city has abused its corporate powers by imposing and collecting license taxes upon the business of selling, and keeping for sale, intoxicating liquors to be used as a beverage. It is alleged that during the period named the officers of the city have entered into agreements with certain persons to the effect that such persons might carry on the business of keeping tippling-houses and other places for the illegal sale of intoxicating liquors within the city, upon the consideration that such persons should pay to the city stipulated fines, to be imposed by the police court at stated times in simulated prosecutions under a certain ordinance passed by the city council in aid of the illegal agreements, it being understood that the fines were to be imposed and received as license taxes for the purpose of carrying on the illegitimate business.

It is further alleged that agreements were made by the city officers with persons keeping places for the sale of intoxicating liquors as a beverage by which such persons should deposit and pay to the city, at stated intervals, stipulated sums in lieu of bail in simulated prosecutions, but which in fact were license taxes for the privilege of carrying on an unlawful business. The persons with whom the illegal agreements mentioned were made, one hundred thirty-four in number, are set forth. It is also alleged that these payments, as fines and forfeited bail, were made upon the agreement that the laws of the state prohibiting the illegal

sale of intoxicating liquors should not be enforced against the persons named; that no officer or policeman of the city should institute or permit any prosecution to be instituted against such persons; and that no arrest should be made to enforce such laws.

In the second count it is alleged that the city, through its officers, entered into agreements with persons keeping bawdy-houses and houses of ill fame, by which they were to be allowed a license to maintain such houses within the city on consideration that such keepers would pay to the city fixed sums, as fines, or deposits, in lieu of bail in simulated prosecutions. It is further alleged that when these sums of money were paid the keepers were privileged to carry on the unlawful business, free from prosecution or interference by the officers, police court or policemen of the city.

There was a general denial filed by the city, but it was finally conceded and stipulated that the city had entered into and carried out the agreements set forth in the petition.

At the hearing the only defense urged by the city was that the state was estopped, or barred, from maintaining *quo warranto* on the first cause of action because of a judgment obtained by the state in March, 1887, ousting the city from exercising, or attempting to exercise, the power of authorizing, or licensing, the sale of intoxicating liquors. It is conceded that such a judgment was rendered. (*The State, ex rel., v. City of Leavenworth,* 36 Kan. 314, 13 Pac. 591.) It may also be conceded that the judgment in favor of the state, although rendered more than twenty years ago, is not barred, nor its force weakened, by the lapse of time. That adjudication, however, does not deprive the state of the remedy of *quo warranto* as to subsequent acts and later abuses of corporate powers. The state is not estopped from maintaining the proceeding upon causes that have arisen since the rendition of the judgment in 1887. The methods and acts of the officers then in charge of the city government in con-

trolling the liquor traffic were the subjects of consideration in that case; and it was adjudged that they were unauthorized. Since that time many administrations have intervened, the statutes of the state upon the subject have been modified, and how far the city ordinances under which the officers then operated differ from those now in force does not appear. Nor do we know whether the methods and devices now employed by the officers to license the illegal sale of liquors, and to protect those engaged in it, are the same as those formerly employed. The municipality acts only through its officers, and its functions and powers are exercised by them. This case does not involve the corporate acts of the city officers of 1887, but the issue is whether the acts of the officers of 1907, and of the preceding period of two years, are unauthorized and constitute an abuse of corporate power.

The general rule is that a judgment is conclusive between the parties upon all questions directly involved in the issue and necessarily determined by it, but the estoppel of a judgment only applies to the facts as they existed when the judgment was rendered and do not extend to facts which have occurred since that time. (23 Cyc. 1161.) The fact that a party may have obtained a judgment against another does not bar him from subsequently asking for the same kind of relief against the same party, if conditions have changed and new facts and elements are brought in. (*Guilford v. Western Union Telegraph Co.*, 59 Minn. 332, 61 N. W. 324, 50 Am. St. Rep. 407; *Beckwith v. Griswold*, 29 Barb. [N. Y.] 291; *Morrison v. Beckey*, 6 Watts [Pa.] 349; *Standish v. Parker*, 19 Mass. 20, 13 Am. Dec. 393; *Meriwether v. Block*, 31 Mo. App. 170; *Stafford v. Maddox*, 87 Ga. 537, 13 S. E. 559; *Charles Dewey, Inspector of Finance, v. The St. Albans Trust Co.*, 60 Vt. 1, 12 Atl. 224, 6 Am. St. Rep. 84; *State v. Moores*, 70 Neb. 48, 96 N. W. 1011; *Cromwell v. County of Sac*, 94 U. S. 351, 24 L. Ed. 195;

*Nesbit v. Riverside Independent District,* 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562; *Pittsburgh, C., C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co.,* 107 Fed. 781, 46 C. C. A. 639; 24 A. & E. Encycl. of L. 777.)

It will be noted that the former adjudication, under which the defendant would take cover, was not in its favor. On the other hand it decided that the officers then in control were acting in violation of law in granting licenses and giving protection to those engaged in the illegal sale of intoxicating liquors, and it is now confessed that the present officers are guilty of other violations of a like character. Under the circumstances the city is hardly in a position to insist that some of the other remedies provided by law should be employed against it. The law specifically authorizes the use of *quo warranto* to restrain municipalities from usurping power and to hold them within the bounds of lawful authority. (*The State, ex rel., v. City of Topeka,* 31 Kan. 452; *The State, ex rel., v. City of Leavenworth,* 36 Kan. 314, 13 Pac. 591; *The State, ex rel., v. Regents of the University,* 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378.) The state in the exercise of its high prerogative right to see that the laws are observed and enforced chose the remedy of *quo warranto* rather than injunction, punishment for contempt, or other civil or criminal proceedings that might have been employed. It is not to be deprived of a remedy expressly given because another may be available. The offending municipality, which admits that it is usurping a corporate power not conferred, and is doing that which is expressly prohibited by law, is not in a position to select remedies, nor to insist that it should have been punished for contempt of a judgment rendered more than twenty years ago prohibiting unauthorized acts of a similar character. It is contended that the defendant should not be burdened with the costs of another *quo warranto* proceeding, but this may be easily avoided by refraining

from the abuse of corporate power and by yielding obedience to the laws of the state.

Judgment as prayed for will go in favor of the state in both causes of action.