IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,528

STATE OF KANSAS *ex rel.* DEREK SCHMIDT, Attorney General,
*Petitioner*,

v.

CITY OF WICHITA, KANSAS, a Municipal Corporation,
*Respondent*.

SYLLABUS BY THE COURT

1.

Quo warranto is an appropriate means of attacking the validity of a municipal ordinance.

2.

An appellate court may properly entertain an action in quo warranto if it decides the issues raised are of sufficient public concern.

3.

Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge.

4.

The fundamental rule of statutory interpretation to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. Its intent is to be derived in the first place from the words used. When statutory language is

1

plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there.

5.

K.S.A. 12-3013(a) provides that an ordinance proposed through the initiative and referendum process shall be filed with the city clerk along with a petition requesting that the governing body either pass the proposed ordinance or submit it to the electorate for a vote.

6.

Under the facts of this case, the supporters of a proposed ordinance failed both absolutely, and substantially, to comply with K.S.A. 12-3013(a) when they did not file the proposed ordinance with the city clerk.

Original action in quo warranto. Opinion filed January 22, 2016.

*Jeffrey A. Chanay*, chief deputy attorney general, argued the cause, and *Derek Schmidt*, attorney general, *Dennis D. Depew*, deputy attorney general, *Lisa A. Mendoza*, assistant attorney general, and *Dwight R. Carswell*, assistant solicitor general, were with him on the briefs for petitioner.

*Sharon L. Dickgrafe*, chief deputy city attorney, argued the cause and was on the brief for respondent.

The opinion of the court was delivered by

NUSS, C.J.: This is an original action in quo warranto brought by the State on relation of the Attorney General for a writ declaring an ordinance of the City of Wichita (City) to be null and void. Relying upon the Kansas initiative and referendum statute,

2

K.S.A. 12-3013, the city council had submitted a general description of the proposed ordinance as a ballot question, which was approved by city electors during the April 2015 general election.

At the ordinance's core is a provision appearing to reduce the severity level of a first-offense conviction for possession of 32 grams or less of marijuana and/or related drug paraphernalia from a misdemeanor to an "infraction" when the offender is 21 years of age or older. A related provision substantially reduces the accompanying penalties.

The State asks this court to permanently prohibit the City from publishing, implementing, and enforcing the ordinance because the ordinance: (1) impermissibly conflicts with and is therefore preempted by uniform state law under the Home Rule Amendment to the Kansas Constitution, Article 12, § 5(b); (2) was not adopted in accordance with procedures set out in K.S.A. 12-3013(a); (3) does not contain an ordaining clause as required by K.S.A. 12-3005; and (4) is essentially administrative in nature, which excludes it from the scope of the referendum and initiative process under K.S.A. 12-3013(e)(1).

We agree the ordinance was not enacted in accordance with procedures set out by K.S.A. 12-3013(a). Because this ruling effectively disposes of the case, we need not consider the State's remaining arguments. See *Elkins v. Moreno*, 435 U.S. 647, 661, 98 S. Ct. 1338, 55 L. Ed. 2d 614 (1978) (courts avoid making unnecessary constitutional decisions). The writ of quo warranto is issued; the ordinance is null and void.

FACTS AND PROCEDURAL HISTORY

The principal facts are undisputed. Under the city's municipal code, Section 5.26.040(a) (2010) possession of marijuana and/or related drug paraphernalia has been

3

classified as a misdemeanor punishable by a fine not to exceed $2,500 and/or up to 12 months' imprisonment in the Sedgwick County Jail. This version of the code has been consistent with state criminal statutes. See, *e.g.*, K.S.A. 2014 Supp. 21-5706(c)(2)(A); 21-5709(e)(2)(B), (3); 21-6602(a)(1); 21-6611(b)(1).

On January 7, 2015, a group known as the Marijuana Reform Initiative (the Initiative) filed with the Wichita city clerk petitions containing thousands of signatures of purportedly qualified electors and proposing a change to the municipal code. The Initiative's proposal amends Section 5.26.040 of the code by repealing that entire section and adopting substitute provisions.

Subsection (a) of the proposed ordinance reestablishes the general rule, *e.g.*, possession is a misdemeanor:

"(a) Except as provided at Subsections (b) and (c) herein, a violation of the provisions of this Chapter is a misdemeanor and, upon conviction, the sentence shall be a fine not to exceed two thousand five hundred dollars ($2,500.00), and/or imprisonment of up to twelve (12) months in the Sedgwick County Jail."

Subsections (b) and (c) purport to describe a reduced severity level and accompanying penalties for certain first-time possessors of marijuana and marijuana-related drug paraphernalia:

"(b) *A conviction of any person twenty-one (21) years of age or older of Section 5.26.010 for possession of . . . (32) grams or less of* cannabis sativa L*., or otherwise known as marijuana, as defined by Section 5.25.005(i), for the first offense, is an infraction and the sentence shall be a fine not to exceed fifty dollars ($50.00)* and no incarceration, probation, nor any other punitive or rehabilitative measure shall be imposed. For convictions under this Subsection for offenses in the Old Town

4

Entertainment District, as defined by Section 5.05.020, the sentence shall be the mandatory minimum fine set forth at Section 5.05.030 and no incarceration, probation, nor any other punitive or rehabilitative measure, shall be imposed; however, pursuant [to] Section 5.05.030(b), the Court may order community service in lieu of mandatory minimum fine in accordance with the provisions thereof. Nothing in this Subsection shall be construed to restrict eligibility for diversion in lieu of further proceeding or deferred judgment pursuant Section 1.06.010 *et seq*.

"(c) *A conviction of any person twenty-one (21) years of age or older of Section 5.26.030 for possession of drug paraphernalia, as defined by Section 5.25.005(f), for the first offense, involving* cannabis sativa L., *or otherwise known as marijuana, as defined by Section 5.25.005(i), is an infraction and the sentence shall be a fine not to exceed fifty dollars ($50.00)* and no incarceration, probation, nor any other punitive or rehabilitative measure shall be imposed. For convictions under this Subsection for offenses in the Old Town Entertainment District, as defined by Section 5.05.020, the sentence shall be the mandatory minimum fine set forth at Section 5.05.030 and no incarceration, probation, nor any other punitive or rehabilitative measure shall be imposed; however, pursuant [to] Section 5.05.030(b), the Court may order community service in lieu of mandatory minimum fine in accordance with the provisions thereof. Nothing in this Subsection shall be construed to restrict eligibility for diversion in lieu of further proceeding or deferred judgment pursuant Section 1.06.010 *et seq*." (Emphasis added.)

Subsection (d) describes the intent of subsections (b) and (c):

"(d) *The intent of Subsections (b) and (c) of this Chapter is to reduce first offense convictions pursuant Sections 5.26.010 and 5.26.030 for* cannabis sativa L., *or otherwise known as marijuana, as defined by Section 5.25.005(i), to be an infraction, and not a misdemeanor.* For the purpose of determining whether a conviction is a first or subsequent offense under Subsections (b) and/or (c), any conviction or convictions resulting from the same incident occurring after July 1, 2015, shall constitute a first offense and any subsequent conviction or convictions occurring within one (1) year thereafter shall constitute a subsequent offense." (Emphasis added.)

5

Subsection (d) also describes other matters relating to these particular first-time offenders, especially limiting the referral of such charges by city law enforcement and city prosecutors. The subsection further redefines convictions of these first offenses for purposes of reporting to those law enforcement agencies maintaining criminal records and for later calculation of criminal histories for sentencing offenders:

"Nothing herein shall be construed to restrict law enforcement officers of the City of Wichita, Kansas, to complain of violations of offenses other than Subsections (b) and (c) of this Chapter. *No law enforcement officer of the City of Wichita, Kansas, or his or her agent, shall complain of violations of these Subsections* [b and c] *to any other authority except the City Attorney of the City of Wichita, Kansas; and, furthermore, the City Attorney of the City of Wichita, Kansas, or any of his or her authorized assistants, shall not refer any said complaint to any other authority for prosecution. No convictions pursuant Subsections (b) and/or (c) of this Chapter shall be recorded as a misdemeanor to the Kansas Bureau of Investigation Central Repository or any other state or federal law enforcement reporting agency.*" (Emphasis added.)

Subsection (e) provides that should the State ever reduce the penalties below what the City dictates for possession of marijuana and drug paraphernalia as described in subsections (b) and (c), the State's lower penalties shall prevail:

"(e) Should the State of Kansas enact lesser penalties than that set forth in Subsections (b) and (c) of this Chapter for possession of *cannabis sativa L.*, or otherwise known as marijuana, as described therein, or possession of drug paraphernalia, as further described therein, then these Subsections, or relevant portions thereof, shall be null and void. The invalidity or unenforceability of any provisions of Subsections (b) and (c) shall not affect the validity or enforceability of other provisions thereof, which shall remain in full force and effect."

6

And subsection (f) provides for a mandatory evaluation of offenders under 21 years of age:

"(f) In addition to any other sentence authorized by this Chapter, any person convicted of having violated the terms of this Chapter, while under twenty-one (21) years of age, shall be ordered to submit to and complete a community-based alcohol and drug safety action program certified pursuant to K.S.A. 8-1008 and amendments thereto and to pay a fee for such evaluation. If the judge finds that the person is indigent, the fee may be waived."

The Initiative did not include a copy of this proposed ordinance when it filed its signed petition with the city clerk on January 7. Nor was the proposed ordinance fully set forth in the signed petition, which stated in relevant part:

"I, the undersigned, a qualified elector of the City of Wichita, Kansas, request that the following proposed ordinance, without alteration, be passed or referred to a vote [by] the electors pursuant to the provisions of Chapter 25-3801 of the Kansas Statutes:

"Shall the following be adopted?

"AN ORDINANCE REDUCING THE PENALTY FOR FIRST OFFENSE CONVICTION FOR POSSESSION OF THIRTY-TWO (32) GRAMS OR LESS OF CANNABIS SATIVA L., OTHERWISE KNOWN AS MARIJUANA, AND/OR DRUG PARAPHERNALIA RELATED THERETO, BY PERSONS TWENTY-ONE (21) YEARS [OF] AGE OR OLDER, TO AN INFRACTION WITH A FINE NOT TO EXCEED FIFTY DOLLARS ($50.00)."

After the City received notice from the Sedgwick County Election Office that the petition contained the requisite number of signatures of qualified electors as described in K.S.A. 12-3013(a), on January 27 the city council voted per that statute to submit the issue to the electors at a special election. On March 5, the Attorney General released his

7

opinion concluding that "a court would find the proposed ordinance void because it would conflict with state laws in numerous ways." Att'y Gen. Op. No. 2015-4. Among other things, the opinion noted that it appeared the petition did not comply with several requirements of K.S.A. 12-3013.

Despite the Attorney General's opinion, a majority of the city's electorate voting in the April 7 general election approved the ballot question. Rather than stating the proposed ordinance in full, the ballot contained a general description of the ordinance contents similar to the one appearing in the Initiative's petitions—a ballot summary authorized by K.S.A. 12-3013(b).

The day after the election, the City filed a declaratory judgment action in Sedgwick County District Court, asking for a determination of the new ordinance's validity. The next day the State filed its petition in quo warranto in this court and asked us to declare the ordinance null and void. It also filed a motion to stay the district court proceedings and a motion for temporary restraining order, which sought to stay the publication, implementation, or enforcement of the ordinance. We ordered the City to respond and granted the State's motion for stay of the district court proceedings.

In the City's responsive pleadings, it asked that we either dismiss the State's petition or decline to exercise our jurisdiction and transfer the quo warranto action to the district court for resolution. But it agreed with the State that justice would be best served by staying the publication, implementation, and enforcement of the ordinance during the pendency of this case.

After considering the City's response, we issued another order retaining jurisdiction over the quo warranto action, requiring additional briefing, and setting oral argument. We also denied the State's motion for temporary restraining order. But we

8

issued a more general order prohibiting the City from publishing, implementing, or enforcing this ordinance until further order of the court. In the same order, we continued to stay the district court proceedings.

This court is generally granted original jurisdiction over actions in quo warranto under Article 3, § 3 of the Kansas Constitution and K.S.A. 60-1202.

Additional facts will be added as necessary to the analysis.

ANALYSIS

Issue: *The ordinance is null and void because its proponents failed to follow the procedural requirements of the Kansas initiative and referendum statute, K.S.A. 12-3013.*

*Quo warranto jurisdiction*

An action in quo warranto seeks to prevent the exercise of unlawfully asserted authority. Such an action demands that an individual or corporation—*e.g.*, a municipal corporation—show "by what authority" it has engaged in the challenged action. See *State v. Leavenworth*, 75 Kan. 787, 791, 90 P. 237 (1907) ("The law specifically authorizes the use of quo warranto to restrain municipalities from usurping power and to hold them within the bounds of lawful authority."). It is well established that quo warranto is an appropriate means of attacking the validity of a municipal ordinance. *Sabatini v. Jayhawk Construction Co.*, 214 Kan. 408, 413-14, 520 P.2d 1230 (1974).

The City argues quo warranto is inappropriate and requests we either dismiss the State's action or transfer it to the district court. It continues to contend that the more appropriate remedy is a declaratory judgment obtainable in the district court. The City

9

also argues it did not overstep its authority in submitting the proposed ordinance to the electors.

The State responds by primarily arguing that we face an issue of significant public concern allowing our exercise of discretionary jurisdiction in quo warranto. It further contends the initiative and referendum process contained in K.S.A. 12-3013 does not require the City to adopt an "otherwise unlawful" ordinance submitted by petition.

Admittedly, quo warranto generally will not lie when another plain and adequate remedy exists. But this court has traditionally been somewhat lenient on enforcement of that general rule. See *State, ex rel., v. Allen County Comm'rs*, 143 Kan. 898, 904, 57 P.2d 450 (1936) ("We need not and do not rest this decision [whether to grant relief in quo warranto] solely on the ground another adequate remedy exists in the instant case."). In recognizing our discretion to exercise original jurisdiction in quo warranto, we have further said: "This court may properly entertain this action in quo warranto and mandamus if it decides the issue is of sufficient public concern." *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 53, 687 P.2d 622 (1984).

In our May 14 order, we retained jurisdiction over this action pursuant to our authority granted by the people in Article 3, § 3 of the Kansas Constitution. See *Gannon v. State*, 298 Kan. 1107, 1142, 319 P.3d 1196 (2014) ("We have long held that constitutions are the work of the people."). We conclude at least two questions are of sufficient public concern to warrant potential relief in quo warranto. See *Stephan*, 236 Kan. at 53. The first is the possible conflict between the criminal statutes of the entire state and, to date, the ordinance of one municipality. The second is the possible significance of failure to comply with the language of a statute authorizing the people to submit directly to a city's governing body an ordinance they propose to become law. See *McAlister v. City of Fairway*, 289 Kan. 391, 402, 212 P.3d 184 (2009) (statutory initiative

10

and referendum process is an electoral option reserved to the citizens by the legislature); *State, ex rel., v. City of Hutchinson*, 93 Kan. 405, 144 P. 241 (1914). Accordingly, pursuant to our discretion we shall maintain jurisdiction in this quo warranto action.

*Discussion*

1. *The Home Rule Amendment to the Kansas Constitution*

The State primarily argues that while the Home Rule Amendment to the Kansas Constitution provides that cities are empowered to determine their local affairs by ordinance passed by their governing body, the City's ordinance violates this amendment by impermissibly conflicting with state law. See Kan. Const. art. 12, § 5(b); *Steffes v. City of Lawrence*, 284 Kan. 380, 385-86, 160 P.3d 843 (2007). It alleges this conflict appears in four basic areas of the ordinance: marijuana possession, drug paraphernalia possession, duties of law enforcement officers, and offense recording and reporting.

The City candidly concedes that two parts of subsection (d) of the ordinance "appear to" conflict with state law, *i.e.*, are unconstitutional: "the ordinance's directions to law enforcement regarding referral of charges and its system of determining prior offenses for sentencing purposes." But it argues other provisions "are arguably not in direct conflict with state law" and should be upheld as severable from those two parts.

In less-emphasized arguments, the State also contends that the Initiative did not comply with the K.S.A. 12-3013 procedures when filing its petition, that the ordinance contains no ordaining clause, and that the ordinance's administrative nature precludes the electors' use of K.S.A. 12-3013. But the State urges us instead to decide the constitutional issue because it is one of substantial public concern and our ruling potentially will have statewide consequences.

11

At the threshold, however, we must acknowledge that "[a]ppellate courts generally avoid making unnecessary constitutional decisions." *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003); see *Elkins*, 435 U.S. at 661 (reiterating the Court's "long-standing policy of avoiding unnecessary constitutional decisions"); *Machinists v. Street*, 367 U.S. 740, 749, 81 S. Ct. 1784, 6 L. Ed. 2d 1141 (1961) (recognizing there are "restraints against unnecessary constitutional decisions"). Accordingly, we have held: "[W]here there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges." *Wilson*, 276 Kan. at 91. For this reason, we sometimes have declined to reach the constitutional question presented in other original actions. See, *e.g.*, 276 Kan. at 91-92 (original action in mandamus and quo warranto); *Rogers v. Shanahan*, 221 Kan. 221, 223, 565 P.2d 1384 (1976) (original action in mandamus).

Here, by first deciding the issue of compliance with statutory procedures, we eliminate the need to determine whether the proposed ordinance is constitutional under the Home Rule Amendment. See *Wilson*, 276 Kan. at 92 ("[A] decision in petitioners' favor on the interpretation of the statute would eliminate the necessity for the court to reach the constitutional question."). To instead consider the substantive constitutional issue first—followed by a decision for the State on procedural grounds—could result in a mere advisory opinion on constitutionality, *i.e.*, because the procedural issue alone would have been determinative of the case. Kansas courts do not issue advisory opinions. See *Gannon*, 298 Kan. at 1119.

2. *Procedures under K.S.A. 12-3013*

The initiative and referendum statute, K.S.A. 12-3013, provides procedures for "allow[ing] city electors to submit a proposed ordinance to a city's governing body by petition." *McAlister*, 289 Kan. at 400. The State claims the ordinance was not passed in

12

accordance with the statute's procedures, pointing to admissions by both the interim city attorney and the Initiative that a copy of the proposed ordinance was not filed with the city clerk. See *City of Wichita v. Sealpak Co.*, 279 Kan. 799, 802, 112 P.3d 125 (2005) ("'Admissions against interest made by a party are the strongest kind of evidence and override other factors.'"). Accordingly, we must determine whether K.S.A. 12-3013 requires the proposed ordinance to be filed with the petition.

Interpretation of statutes and ordinances is a question of law. *City of Wichita v. Hackett*, 275 Kan. 848, 850, 69 P.3d 621 (2003). The fundamental rule of statutory interpretation to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. Its intent is to be derived in the first place from the words used. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 9, 290 P.3d 549 (2012). When statutory language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there. 296 Kan. at 9-10 (citing *Steffes*, 284 Kan. at 380, Syl. ¶ 2).

K.S.A. 12-3013(a) describes the interplay between the proposed ordinance and the petition that calls either for the ordinance's passage by the governing body or its submission by that body to the electorate for approval:

> "(a) Except as provided in subsection (e), *a proposed ordinance may be submitted to the governing body of any city accompanied by a petition as provided by this section.* Such petition shall be signed by electors equal in number to at least 25% in cities of the first class, and 40% in cities of the second and third class, of the electors who voted at the last preceding regular city election as shown by the poll books and shall contain a request that the governing body pass the ordinance or submit the same to a vote of the electors. *Such ordinance and petition shall be filed with the city clerk.*

13

"The signatures on the petition need not all be appended to one paper, but each signer shall include the signer's place of residence, giving the street and number (if there are street numbers). One person signing each paper shall make oath before an officer competent to administer oaths that such person believes the statements therein and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. If the *petition accompanying the proposed ordinance* is signed by the required number of electors qualified to sign, the governing body shall either (a) pass such ordinance without alteration within 20 days after attachment of the clerk's certificate *to the accompanying petition*; or (b) if not passed within 20 days, forthwith call a special election, unless a regular city election is to be held within 90 days thereafter, and at such special or regular city election submit the ordinance, without alteration, to the vote of the electors of the city." (Emphasis added.)

Subsection (b) establishes the conditions for how the proposed ordinance is presented on the electors' ballot if the governing body itself did not pass the ordinance:

"(b) The ballots used when voting upon the ordinance *shall set forth the proposed ordinance in full or submit the proposed ordinance by title generally descriptive of the contents thereof.* Each proposed ordinance set forth in full or submitted by title generally descriptive of the contents thereof shall be preceded by the words, 'Shall the following be adopted?' If there is more than one proposed ordinance to be voted upon, the different proposed ordinances shall be separately numbered and printed, and the ballots shall conform to the requirements of K.S.A. 25-605, and amendments thereto." (Emphasis added.)

Subsection (c) establishes considerable restrictions upon repealing or amending a previously approved ordinance initially proposed by electors' petition:

"(c) If a majority of the qualified electors voting on the proposed ordinance votes in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city. *Any ordinance proposed by a petition as herein provided and passed by the*

14

*governing body or adopted by a vote of the electors, shall not be repealed or amended except (1) by a vote of the electors, or (2) by the governing body, if the ordinance has been in effect for 10 years from the date of publication, if passed by the governing body, or from the date of the election, if adopted by a vote of the electors.* Any number of proposed ordinances may be voted upon at the same election, in accordance with the provisions of this section, but there shall not be more than one special election in any period of six months for such purpose. Mayors having veto power shall not veto any such ordinance, and if passed by the council or commission the mayor shall sign the ordinance." (Emphasis added.)

Subsection (d) in turn establishes steps for how a governing body might eventually begin the process for the voters to repeal or amend the ordinance which had been initiated under the petition process and was now law:

"(d) *The governing body may submit a proposition for the repeal of any such ordinance, or for amendments thereto, to be voted upon at any succeeding regular city election.* If such proposition so submitted receives a majority of the votes cast thereon at such election, such ordinance shall thereby be repealed or amended accordingly. Whenever any ordinance or proposition is required by this act to be submitted to the electors of the city at any election, the city shall cause such ordinance or proposition to be published once each week for two consecutive weeks in the official city paper. Such publication shall be not more than 20 or less than five days before the election. Any ordinance heretofore passed or made effective by election under the provisions of section 12-107 of the General Statutes of 1949 shall continue in effect but may be amended or repealed as herein provided." (Emphasis added.)

Finally, subsection (e) excludes certain topics from the statute's initiative and referendum process, *i.e.*, the electorate may not use these statutory procedures to initiate change. See *McAlister*, 289 Kan. at 393. That subsection provides:

15

"(e) The provisions of this section shall not apply to:

(1) Administrative ordinances;

(2) ordinances relating to a public improvement to be paid wholly or in part by the levy of special assessments; or

(3) ordinances subject to referendum or election under another statute."

K.S.A. 12-3013(e)."

Given the failure to file a copy of the proposed ordinance with the city clerk, the City agrees the Initiative did not absolutely comply with the language providing "such ordinance and petition shall be filed with the city clerk." K.S.A. 12-3013(a). But the City argues the Initiative substantially complied, which it contends is enough. Substantial compliance is compliance in respect to the essential matters necessary to assure every reasonable objective of the statute. *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 639, 205 P.3d 1265 (2009).

The State disagrees with the City. So our analysis will include examining the statutory language to determine the reasonable objectives of this provision. *Cf. Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied __ U.S. __,* 134 S. Ct. 162 (2013) (Even when various statutory provisions are unambiguous, we may still construe them in pari materia with a view of reconciling and bringing the provisions into workable harmony.).

We start our analysis by recalling that the first sentence of subsection (a) of the statute provides *what* is to be submitted to the governing body. It states: *"[A] proposed ordinance* may be submitted to the governing body of any city *accompanied by a petition as provided by this section*." (Emphasis added.) K.S.A. 12-3013(a). The last sentence of the subsection then provides *how* and *where* the proposed ordinance is to be submitted to that governing body: "Such ordinance *and* petition shall be filed with the city clerk." (Emphasis added.) 12-3013(a).

16

The second paragraph of subsection (a) provides the next step: a certification that "the petition *accompanying the proposed ordinance* is signed by the required number of electors qualified to sign." (Emphasis added.) K.S.A. 12-3013(a).

This second paragraph of subsection (a) also provides how the governing body must act once certification has occurred. Essentially, the governing body has two choices: either pass the proposed—and unaltered—ordinance or else submit it to public vote:

> "[It] shall either (a) pass such ordinance without alteration within 20 days after attachment of the clerk's certificate *to the accompanying petition*; or (b) if not passed within 20 days, forthwith call a special election, unless a regular city election is to be held within 90 days thereafter, and at such special or regular city election submit the ordinance, without alteration, to the vote of the electors of the city." (Emphasis added.) K.S.A. 12-3013(a).

In short, three different times in K.S.A. 12-3013(a) the legislature has expressly linked the petition to the proposed ordinance through some form of the word "accompany." Accompany means "[t]o go along with." Black's Law Dictionary 20 (10th ed. 2014); see also American Heritage Dictionary of the English Language 8 (1971) (defining "accompany" as "[t]o go along with"; and "[t]o coexist or occur with"). And a petition is "[a] formal written request presented to a court or other official body." Black's Law Dictionary 1329 (10th ed. 2014). So under K.S.A. 12-3013(a), the petition is the document that formally requests the governing body to take action, while the proposed ordinance is the item "going along with" it upon which the action is requested to be taken.

Other parts of subsection (a) reinforce the State's position that the proposed ordinance must accompany the petition's filing. After filing "such ordinance and petition . . . with the city clerk," and after signature certification of "the accompanying petition,"

17

the governing body then shall either "pass *such* ordinance" or "submit *the* ordinance" to the electors. (Emphasis added.) K.S.A. 12-3013(a). And subsection (c) may be said to generally reinforce this conclusion as it addresses the repealing or amending of `"[*a*]*ny ordinance proposed by a petition as herein provided* and passed by the governing body or adopted by a vote of the electors." (Emphasis added.) K.S.A. 12-3013(c).

As we continue our analysis, we identify several legislative objectives in the statutory language. First, the legislature intended that the proposed ordinance be supported by a sufficient number of qualified electors, *i.e.*, whose identities and petition signatures were certified. Second, the legislature intended for the entire electorate, even before any governing body action, to have the opportunity to become fully aware of the exact, unalterable ordinance being proposed to become the law of their city. Third, before the governing body took any action on the proposed ordinance, it should have this same opportunity to be fully aware of what could become the unalterable law for their constituents. Fourth, if the governing body put the proposed ordinance to the electorate, the voters should have the same opportunity for full awareness before voting. Each objective is discussed in turn.

First, regarding certification of supporters of the proposed ordinance, the statutory language provides: "*If* the petition accompanying the proposed ordinance is signed by the required number of electors qualified to sign," the governing body shall either pass the ordinance or submit it to the electorate. (Emphasis added.) K.S.A. 20-3013(a). "If" denotes a necessary condition to proceeding. See American Heritage Dictionary of the English Language 654 (1971) (defining "if" as "on condition that").

Based upon this language, we conclude the legislature intended that before the governing body is required to expend its time and resources on a proposed ordinance, the validity of the proponents' support for it must be established. The City appears to agree.

18

The language of Ordinance No. 49-936—which it passed on January 27 to proceed to city-wide vote—states: "The Sedgwick County Elections Office verified that a sufficient number of signatures were contained on the petition filed with the City Clerk *to require the City Council to consider the proposed ordinance*." (Emphasis added.) See *McAlister*, 289 Kan. at 400-01 ("*Once* a petition is submitted with the required minimum signatures . . . the city must either pass the ordinance without alteration within 20 days or call a special election allowing the city's electors to vote on it." [Emphasis added.]).

This threshold condition would easily begin to be met by presenting to the city clerk the signed petition "along with" the proposed ordinance to which the petition relates. Otherwise, the signatures would be certified in a vacuum, *i.e.*, without reference to the specific ordinance they allegedly support. And the submission of a signed petition that only summarizes the proposed ordinance—particularly when omitting provisions that relate to referral of charges by city law enforcement and prosecutors and a redefinition of convictions of first offenses for purposes of reporting to law enforcement agencies— leaves doubt that this statutory objective was met.

Second, the statutory language also enables the public to be officially and fully notified of the advocates' proposed ordinance before the governing body acts on it. *Cf. McAlister*, 289 Kan. at 393 (K.S.A. 12-3013[a] "allows city electors to submit a proposed ordinance to a city's governing body by petition."). In short, the city clerk's office serves as the official place where any member of the public may fully view any of these documents, *e.g.*, to knowledgeably prepare for participating in the later city council meetings where, after certification, the ordinance must be presented for action or to reliably prepare for advocating a particular position in public regarding the ordinance. This statutory objective was not met when the proposed ordinance was not on file.

19

Third, these statutory provisions also enable the governing body to be officially notified of the advocates' verbatim language proposed as the law of the city before the body must act on it. This filing notification therefore helps enable that body to responsibly fulfill its duty to the people.

As we stated more than 40 years ago, upon the certification to the city commission of the electors' signatures, it is "the *duty* of that body to either pass the ordinance without alteration, or to call a special election." (Emphasis added.) *City of Lawrence v. McArdle*, 214 Kan. 862, 863, 522 P.2d 420 (1974); see also *State, ex rel., v. City of Pratt*, 92 Kan. 247, Syl., 139 P. 1191 (1914) (For a referendum, "[i]t is the duty of the commissioners to pass such repealing ordinance or submit it at the general election . . . and the performance of such duty may be compelled by mandamus.").

As we stated even more recently in language echoing this time-honored duty:

"Once a petition is submitted with the required minimum signatures and assuming the subject matter is authorized, the city *must* either pass the ordinance without alteration within 20 days or call a special election allowing the city's electors to vote on it." (Emphasis added.) *McAlister v. City of Fairway*, 289 Kan. at 401 (citing K.S.A. 12-3013[a] ["[T]he governing body shall either (a) pass such ordinance without alteration . . . or (b) if not passed . . . submit the ordinance, without alteration, to the vote of the electors of the city."]).

So without this filing with the clerk of the verbatim language of the proposed ordinance with the "accompanying petition," the full ordinance cannot reliably be forwarded by the clerk to the governing body for its careful review. This shortcoming is significant because this ordinance is one the body must either (1) pass "without alteration" to become law of the city for at least 10 years before the body can

independently repeal or amend it or (2) submit it unaltered to the electorate to potentially become city law.

The City, however, points to the Bradley affidavit. It states the city attorney's office and at least two members of the city council already had copies of the proposed ordinance at the time of the petition's filing with the clerk. But this does not establish that the other five council members also had copies. While the City also argues the Initiative's proposed ordinance was discussed at the January 27 city council meeting, the meeting minutes do not reflect that any of these copies were shared, *i.e.*, they do not disclose the full council was given the opportunity to be aware of the verbatim language.

And while the city attorney's office had a copy of the Initiative's proposed ordinance, no copy was attached to those minutes like the two ordinances that office prepared for the council's consideration. The first was a proposal that was not voted upon: No. 49-935 ("An ordinance amending the code . . . reducing the criminal penalties for possession of marijuana"), which simply summarized parts of the Initiative's proposed ordinance. The second attached ordinance is what the council passed: No. 49-936 (calling for a special election on the issue).

Accordingly, without the full proposed ordinance on file with the city clerk, this court cannot conclusively determine what version all members of the city council actually had the opportunity to review before voting to submit its unaltered form to the electorate. In particular, we cannot know if all of its members had been made aware of those facets of subsection (d) which relate to first-time offenders, especially limiting the referral of charges by city law enforcement and prosecutors and redefining convictions of these first offenses for law enforcement agency reporting purposes. And even assuming all city council members had received a copy of the proposed ordinance from some unofficial

21

source, the members could not have been sure, absent a side-by-side comparison, that it was the identical ordinance for which petition signatures purportedly had been certified.

This shortcoming means the city council may have been prevented from responsibly performing its duty to the people, *i.e.*, this statutory objective was not met.

Fourth, the filing of the proposed ordinance with the clerk allows the electorate the opportunity to carefully review it in order to cast a fully informed vote if the governing body places the question on the ballot. Having a verbatim copy officially on file is particularly important to accomplish this informational goal because subsection (b) of K.S.A. 12-3013 allows only a general descriptive summary of the ordinance to be placed on the ballot. And the ballot here in fact simply provided:

"SHALL THE FOLLOWING BE ADOPTED?

"An ordinance reducing the penalty for first offense conviction for possession of thirty-two (32) grams or less of cannabis sativa L., otherwise known as marijuana, and/or drug paraphernalia related thereto, by persons twenty-one (21) years of age or older, to an infraction with a fine not to exceed fifty dollars ($50.00).

"YES ___ NO_____"

The general description of the question on the ballot did not disclose a number of changes being made to the current city ordinance that some voters could have believed significant to their decision, *e.g.*, the provisions prohibiting the referral of charges or redefining convictions for first offenses. In this respect the public's vote echoes the absences from the earlier city council's vote to forward a proposed ordinance to the electorate.

22

The City, however, again points to Bradley's affidavit, which states that a copy of the proposed ordinance was available on the Initiative's website for public viewing. It also argues the proposed ordinance was widely publicized in the media. But neither a proponent's website nor the media's message can substitute for an official and thus incontrovertible statement of the proposed ordinance that is filed with the city clerk, then signature-certified by the elections office, and ultimately presented by the city clerk to the city council for its required action. See *McAlister*, 289 Kan. at 400-01. So without the proposed ordinance on file, we cannot conclude this objective of the statute has been met: electors have not been officially advised of the entirety of what the Initiative requests to become law.

The City has generally argued that substantial, not absolute, compliance with K.S.A. 12-3013(a) is sufficient. Assuming, without deciding, this is the correct standard, in addition to what we have already stated, we further observe this case is readily distinguishable from others in the initiative and referendum area in which that standard has been applied to aid the party asserting it.

For example, in *Eveleigh v. Conness*, 261 Kan. 970, 983, 933 P.2d 675 (1997), this court applied the doctrine of liberal construction to interpret an ambiguity in the recall petition statute, K.S.A. 25-4325 (Furse 1993), and concluded there was substantial compliance with its provisions. See 261 Kan. at 983 (affidavits filed by sponsors of petition for recall swearing to grounds for recall were in substantial compliance with statute that was ambiguous regarding whether sponsors were required to swear only to grounds for recall or to contents of entire affidavit). But, unlike in *Eveleigh*, the statute at issue here is not ambiguous. K.S.A. 12-3013 plainly states what is expected of electors who wish to submit an ordinance to the city's governing body to eventually become law. So our liberal construction of K.S.A. 12-3013 is not required. See *Shrader v. Kansas*

23

*Dept. of Revenue*, 296 Kan. 3, 9-10, 290 P.3d 549 (2012) ("When statutory language is plain and unambiguous, there is no need to resort to statutory construction.").

The situation in the instant case is also distinguishable from the one in *State v. Jacobs*, 135 Kan. 513, 11 P.2d 739 (1932), where this court found substantial compliance with a statute governing protest petitions against the passage of a city ordinance. That statute required the petition to be filed with the board of city commissioners, but the court determined that filing the petition with the city clerk constituted substantial compliance. 135 Kan. at 516-17. By contrast, in this case there simply was no effort whatsoever by the Initiative to comply with the statutory provision that the proposed ordinance be filed with the city clerk. According to Bradley's affidavit, while she had a copy of the proposed ordinance with her when filing the petition with the clerk, she did not file it.

CONCLUSION

Given the dispositive nature of our ruling on the filing issues, we need not consider the State's remaining arguments, including the potential conflict of the city ordinance with state law. See *Elkins v. Moreno*, 435 U.S. 647, 661, 98 S. Ct. 1338, 55 L. Ed. 2d 614 (1978). The ordinance is null and void because the Initiative failed to file with the city clerk the proposed ordinance along with the petition as set forth in K.S.A. 12-3013(a).

The State's request for a writ in quo warranto is granted.

* * *

JOHNSON, J., concurring in part and dissenting in part: I agree with the majority's conclusion that, by failing to file the proposed ordinance with the city clerk, the

24

Marijuana Reform Initiative (Initiative) did not comply with a statutory requirement necessary to effect a citizen-initiated city ordinance. Where I part company with the majority is with its determination that it was proper for this court to retain jurisdiction over this original action when it was readily apparent that adequate relief was available in the district court.

Granted, the extent of a municipality's constitutional home rule powers, as manifested in this case by the alleged conflict between a municipal ordinance and state-wide criminal law, could provide the rare circumstance justifying a departure from our general rule of declining concurrent jurisdiction over original actions. See Supreme Court Rule 9.01(b) (2015 Kan. Ct. R. Annot. 88) ("An appellate court ordinarily will not exercise original jurisdiction if adequate relief appears to be available in a district court."). But the majority did not reach the constitutional issue on home rule. Instead, the majority avoided the question with which the public is most concerned by applying the discretionary policy of declining to reach constitutional questions where an alternative ground for relief is presented. I submit that, if the court was wholeheartedly committed to its prudential policy of constitutional question avoidance, an exception to the concurrent jurisdiction rule of Supreme Court Rule 9.01(b) was unjustified in this case.

The majority attempts to justify its extraordinary exercise of original jurisdiction by elevating the significance of the State-raised question of the proposed ordinance's compliance with the procedural requirements of the initiative and referendum statute. But applying well-settled canons of statutory construction to determine whether an action is procedurally flawed is something district courts do with regularity. Moreover, unlike appellate courts, district courts are equipped for, and adept at, receiving evidence and making factual determinations. In my view, the ability to further develop the facts would have aided the determination of the compliance question in this case.

25

When this original action was filed, the district court already had a pending declaratory judgment action. Remanding this original action to be consolidated with the pending district court case would have been an ordinary, natural course of action to deal with the State's statutory compliance challenge. Indeed, such a remand might well have accelerated the case's resolution on statutory compliance grounds. On the other hand, if the district court determined that it could reach the constitutional question, its decision was still subject to review by this court.

In short, I view this court's May 13, 2015, order retaining jurisdiction as being indiscreet, given that one of the claims in the Attorney General's petition sought relief on procedural grounds for which the district court could have provided adequate relief. I would acknowledge that indiscretion in this opinion to provide guidance for litigants involved in future concurrent jurisdiction circumstances.

\* \* \*

BILES, J., concurring in part and dissenting in part: I concur with the result that quo warranto is an appropriate remedy that must issue because initiative supporters failed to comply with K.S.A. 12-3013(a) by not filing both the petition and the proposed ordinance with the city clerk. There is no escaping that conclusion.

I dissent from the majority's choice to evade the more substantive constitutional and statutory questions presented by this controversy, *i.e*., (1) whether the ordinance impermissibly conflicts with, and is therefore preempted by, uniform state law under the Home Rule Amendment to the Kansas Constitution, Article 12, § 5(b); and (2) whether the ordinance is principally administrative in nature and therefore excluded from the statutory initiative and referendum process under K.S.A. 12-3013(e)(1). Put simply, I cannot believe we took this case just to tell the parties what they already knew.

26

The exercise of our original jurisdiction under Article 3, Section 3 of the Kansas Constitution is serious business and pragmatically employed to give government officials an authoritative interpretation of applicable law on matters of significant public concern. See *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 53, 687 P.2d 622 (1984). Both the Attorney General and the City of Wichita have compelling interests in knowing much more than this court is telling them about how this proposed ordinance squares with our constitution and statutes. Likewise, Wichita voters should know whether the results of any future efforts on this topic may be carried out by their city officials through a local ordinance or if they must redeploy to the legislature to pursue a change in state law. With today's result they are instead left with a judicial version of Blind Man's Bluff.

Kansans are empowered to petition their government to hold an election for various purposes. See, *e.g*., Kan. Const. art. 4, § 3 (recall of elected officials); Kan. Const. art. 12, § 5 (protests against certain taxes, bonds, charter resolutions, and ordinances); K.S.A. 12-3013 (initiative and referendum ordinances for cities). In this case, more than 20,000 citizens in Wichita voted to reduce the criminal penalty for first-offense possession of marijuana and related paraphernalia, within certain parameters, and to change the classification of that offense from a misdemeanor to an infraction. The route they hoped might achieve this result was by way of the municipal initiative and referendum procedures set out in state law.

The majority's decision to sidestep the questions regarding the ordinance's constitutionality and whether its subject matter is appropriate for the process employed to adopt it is a temporary retreat from controversy. The majority's rationale is that it does not have to answer these questions, so it will not. But we already crossed the Rubicon when we retained jurisdiction instead of leaving the issues to be litigated in district court.

27

We did so because these substantive issues presented matters of sufficient public concern. See Supreme Court Rule 9.01(b) (2015 Kan. Ct. R. Annot. 88) ("An appellate court ordinarily will not exercise original jurisdiction if adequate relief appears to be available in a district court."); see also *State ex rel. Stephan*, 236 Kan. at 53 ("innumerable lawsuits involving the issue here could be avoided if this court will take jurisdiction of this controversy and determine the issue at this time); *State, ex rel., v. City of Topeka*, 175 Kan. 488, 264 P.2d 901 (1953) (quo warranto action challenging annexation ordinance); *State v. Leavenworth*, 75 Kan. 787, 791, 90 P. 237 (1907) ("The law specifically authorizes the use of quo warranto to restrain municipalities from usurping power and to hold them within the bounds of lawful authority."); *State, ex rel., v. City of Topeka*, 31 Kan. 452, 454, 2 P. 593 (1884) ("[W]henever a municipal corporation usurps any power which might be conferred upon it by the sovereign power of the state, but which has not been so conferred, such corporation may be ousted from the exercise of such power by a civil action in the nature of quo warranto in the supreme court.").

With the case now fully briefed and argued, how can this court say it is giving an authoritative interpretation of applicable law on matters of significant public concern if we leave Wichita voters, city officials, and the Attorney General to guess whether further efforts under the initiative and referendum statute are legal? These citizens and public officials deserved prompt and final determinations from the highest court in this state instead of being left to wonder what happens if they do it all over again.

As support for not deciding the constitutional question, the majority recounts the maxim that appellate courts generally will avoid making unnecessary constitutional decisions. Slip op. at 12. In doing so, it cites two prior decisions from this court in quo warranto proceedings: *Wilson v. Sebelius*, 276 Kan. 87, 72 P.3d 553 (2003) and *Rogers v. Shanahan*, 221 Kan. 221, 565 P.2d 1384 (1976). But neither case is analogous because in both a decision resting on nonconstitutional grounds put a final end to the dispute.

28

With the present case, the underlying actual controversies remain alive and well for another day. In this context, a procedural decision on the filing requirements does not eliminate the need to decide the constitutional question as the majority claims. Addressing the substantive arguments already presented would give the authoritative determination the parties require to perform their official obligations.

For these reasons, I concur in part and dissent in part.