NOT DESIGNATED FOR PUBLICATION

No. 117,280

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LINDON A. ALLEN,
*Appellant*,

v.

KANSAS DEPARTMENT FOR AGING AND
DISABILITY SERVICES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed September 8, 2017. Affirmed.

*Lindon A. Allen*, appellant pro se.

*Lori D. Dougherty-Bichsel*, senior litigation counsel, of Kansas Department for Aging and Disability Services, for appellee.

Before SCHROEDER, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: Lindon A. Allen, a sexually violent predator, alleges that his 18-day confinement in county jail during his annual review violated his statutory and constitutional rights. The district court dismissed Allen's petition for judicial review, finding that the sole defendant, Kansas Department for Aging and Disability Services (KDADS), had not taken any agency action that was reviewable under the Kansas Judicial Review Act (KJRA). We agree.

1

*Factual and procedural history*

The facts giving rise to this appeal are not in dispute. Allen was deemed a sexually violent predator (SVP) under the Kansas Sexually Violent Predator Act (KSVPA) so he was civilly confined for treatment. Pursuant to a court order, the Sedgwick County Sheriff's Department took custody of Allen on July 27, 2015, and held Allen in the Sedgwick County jail pending his annual review by the court. There, his personal effects were confiscated, he was strip searched, and he was not given the opportunity for bail. After the district court conducted Allen's annual review, Allen was released from custody by the County on August 13, 2015, and was returned to the Sexual Predator Treatment Program (SPTP).

After returning from his annual review, Allen filed a grievance with the SPTP alleging that his confinement in county jail violated his statutory and constitutional rights by treating him more restrictively than a common criminal. The director of SPTP informed Allen that SPTP had no control over the conditions of confinement by a county during an SVP's annual review and that the Kansas Court of Appeals had approved holding SVPs in county jails during their annual reviews. Allen then requested an administrative hearing.

KDADS moved to dismiss, arguing that no jurisdiction existed for an administrative action because KDADS had not taken any agency action. The Kansas Office for Administrative Hearings agreed. It dismissed Allen's request for an administrative hearing finding that KDADS had not taken any action and that Allen's claims should have been brought against Sedgwick County instead of against KDADS.

Allen then petitioned the Secretary of KDADS for review, but the Secretary found his petition untimely so Allen filed a petition for judicial review. The district court found Allen's petition timely but declined to remand the case to the Secretary of KDADS.

2

Instead, the district court dismissed Allen's petition finding that KDADS had not taken any agency action that was reviewable under the KJRA. Later, the district court denied Allen's motion to alter or amend the judgment by referencing its original order and stating that Allen's claims were meritless. Allen now appeals that decision, challenging KDADS's authority to send him to the county jail and the treatment to which he was subject while there.

*Does Allen have standing to pursue this claim?*

We briefly address KDADS's contention that Allen lacks standing to maintain this action against KDADS. The district court did not address standing in its order.

The KJRA states: "The following persons have standing to obtain judicial review of final or nonfinal agency action: (a) A person to whom the agency action is specifically directed." K.S.A. 77-611(a). "Agency action" is defined to include: "[A]n agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-602(b)(3). KDADS's performance of its duty to send Allen to the county jail for his annual review hearing was thus agency action. Because that action was specifically directed to Allen, he has standing to obtain judicial review of that action. But as we discuss below, KDADS has not been shown to have taken any other agency action—Allen has not shown that his treatment during his confinement at the county jail was due to any action or inaction by KDADS.

We note that from 2009 to 2015, the KJRA specifically exempted KDADS's actions from its purview, stating: "This act does not apply to agency actions . . . concerning the civil commitment of sexually violent predators . . . ." See K.S.A. 2014 Supp. 77-603(c)(9). But that exemption was removed in 2015. The KJRA "is the exclusive remedy for all requested relief which an agency can grant under its authority." *Douglass v. Kansas State University*, 22 Kan. App. 2d 171, 174, 915 P.2d 782 (1996).

3

See K.S.A. 77-606. Nonetheless, "[n]o state agency has the authority to declare a law unconstitutional." *Kansas Bldg. Industry Work. Comp. Fund v. State*, 49 Kan. App. 2d 354, 381, 310 P.3d 404 (2013).

Allen's claim here is brought solely as an appeal through the KJRA. He has not brought his action pursuant to K.S.A. 2016 Supp. 60-1501 or 42 U.S.C. § 1983 (2012) or another action which could reach the constitutionality of KDADS's actions. Thus, we limit our review to what we traditionally use in reviewing agency action. A district court's decision to grant or deny a petition for review under the KJRA is subject to the same appellate review as other civil cases. K.S.A. 77-623. The burden of proving that an agency's action is wrongful is on the party claiming that an agency action was invalid. K.S.A. 2016 Supp. 77-621(a)(1). That burden rests on Allen.

*Was KDADS's act of releasing Allen to the County wrongful?*

Allen asserts that KDADS has sole responsibility for the care of confined SVPs and that the only exception is for law enforcement to take custody of SVPs in the event of a parole violation, a postrelease violation, or another criminal offense. Allen argues that transportation and confinement for an annual review hearing does not fall within the exception which permits law enforcement to take custody of SVPs.

We review the relevant statutes in detail. Interpretation of statutes is a question of law and this court has unlimited review. *Gehring v. State*, 20 Kan. App. 2d 246, 248, 886 P.2d 370 (1994). The most fundamental rule of statutory interpretation is that the intent of the legislature governs. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). When interpreting a statute, the words of a statute are given their ordinary meaning; other canons of statutory interpretation are used only if the text is unclear or ambiguous. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservatory, Inc.*, 292 Kan. 285, 320, 255 P.3d 1186 (2011).

Allen argues that KDADS had a duty to provide for his care until he was safe to be at large so it violated that duty by releasing him to the custody of the County. He bases this duty on K.S.A. 2016 Supp. 59-29a07(a), which provides in relevant part:

"If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the secretary for aging and disability services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large. Such control, care and treatment shall be provided at a facility operated by the Kansas department for aging and disability services."

Allen also relies on subsection (d) of that same statute, which permits SVPs to be taken into custody by the Department of Corrections but only for "any parole revocation proceeding or any arrest or conviction for a criminal offense of any nature":

"(d) If any person while committed to the custody of the secretary pursuant to the Kansas sexually violent predator act shall be taken into custody by any law enforcement officer as defined in K.S.A. 2016 Supp. 21-5111, and amendments thereto, pursuant to any parole revocation proceeding or any arrest or conviction for a criminal offense of any nature, upon the person's release from the custody of any law enforcement officer, the person shall be returned to the custody of the secretary for further treatment pursuant to the Kansas sexually violent predator act." K.S.A. 2016 Supp. 59-29a07(d)

Allen's annual review hearing is not a parole revocation proceeding or an arrest or conviction for a criminal offense, so Allen contends his custody by the County for his annual review hearing is not authorized by this statute.

An SVP confined under the KSVPA must undergo an annual psychological evaluation to determine whether the SVP is safe to be released from confinement. See *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 594-95, 389 P.3d 992 (2017). The annual review

5

hearing is conducted by the court that initially committed the SVP, pursuant to K.S.A. 2016 Supp. 59-29a08:

"(a) . . . The court that committed the person under the Kansas sexually violent predator act shall then conduct an annual review of the status of the committed person's mental condition. The committed person shall have a right to have an attorney represent the person at the hearing but the person is not entitled to be present at the hearing.

. . . .

"(c) If the court at the annual review hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue. The committed person shall be entitled to be present and entitled to the benefit of all constitutional protections that were afforded the person pursuant to K.S.A. 59-29a06, and amendments thereto."

Another statute provides that when a court orders an SVP to appear, the county in which that court is located becomes responsible for "transportation, security and control" of the SVP:

"(b) When a court orders a person committed to the secretary's custody under any provision of this act to appear at a court proceeding, the county where such court is located shall be responsible for the transportation, security and control of such person and all costs involved. The secretary shall not be required to provide an employee to travel with the committed person."  K.S.A. 2016 Supp. 59-29a12(b).

This statute specifically applies to annual review hearings, as well as other court-ordered appearances.

Allen is correct that the KSVPA does not expressly provide that an SVP may be held in county jail during an annual review. But the statute makes the county responsible not only for the transportation of an SVP who appears at a court proceeding, but also for

6

the "security and control" of an SVP during that time. The legislature would not have included the words "security" and "control" if a county were responsible only for transporting an SVP to a courthouse. Control is defined as the "direct or indirect power to govern the management . . . of a person . . . ; the power of authority to manage, direct, or oversee." Black's Law Dictionary 403 (10th ed. 2014).

By providing that KDADS is not required to provide an employee to travel with an SVP during an annual review, the statute shows that KDADS is not responsible for an SVP during the SVP's annual review. By mandating that the county transport the SVP, on court order, to appear at a court-ordered proceeding, this statute implicitly requires KDADS to permit such transportation. To do so, KDADS must release the SVP from its custody.

During the time an SVP is not in the actual custody or supervision of the Secretary, the SVP is not considered to be in treatment pursuant to the KSVPA. Cf. K.S.A. 2016 Supp. 59-29a07(d) (providing that when an SVP is in custody of any law enforcement officer pursuant to any parole revocation proceeding or any arrest or conviction for a criminal offense, that SVP is not in the actual custody or supervision of the Secretary and is not considered to be in treatment pursuant to the KSVPA). KDADS's custody of an SVP transported to court for a court-ordered proceeding stops when the county begins its transportation of that SVP to court and does not begin again until the SVP is transported back to KDADS's custody.

Additionally, K.S.A. 2016 Supp. 59-29a07(b) mandates that SVPs are to be held in secure facilities. But a county jail is expressly included within the term "secure facility." See K.S.A. 2016 Supp. 59-29a05(d) (After an initial probable cause determination is made, "the court shall order that the person be transferred to *an appropriate secure facility, including, but not limited to, a county jail*, for an evaluation as to whether the person is a sexually violent predator."[Emphasis added.]). This statute

7

expressly authorizes the court order of transfer to a county jail for an initial evaluation as to whether the person is a sexually violent predator. A court order transferring an SVP to a county jail for an annual evaluation as to whether the person remains a sexually violent predator is not categorically different.

An ordinary reading of K.S.A. 2016 Supp. 59-29a12(b) thus shows that the county where the SVP is to appear in court has the authority to place an SVP in county jail during court proceedings. At least two other panels of this court have so concluded. See *Burch v. Ash*, No. 116,599, 2017 WL 2021067, at *2-4 (Kan. App. 2017) (unpublished opinion) (K.S.A. 2016 Supp. 60-1501 case finding housing of SVP in county jail to permit his presence at his transitional release trial did not violate his statutory or constitutional rights); *In re Care & Treatment of Quillen*, No. 114,708, 2016 WL 7324416, at *9-10 (Kan. App. 2016) (unpublished opinion) (upholding placement of SVP in county jail while a district court considered his petition for transitional release under the KSVPA). We find those cases to be well reasoned and persuasive.

The only action that KDADS took, as revealed by the record, was releasing Allen to the custody of the County for purposes of his annual review hearing. That action was implicitly authorized by K.S.A. 2016 Supp. 59-29a12(b). Allen has thus failed to show the invalidity or wrongfulness of that agency action.

*We do not reach Allen's remaining arguments*

Allen raises three additional arguments that the conditions of his confinement in the county jail violated his statutory and constitutional rights:  (1) that his confinement in county jail violated his liberty interests; (2) that his status while in county jail is analogous to that of an individual charged with a crime so he had a right to be released on bond; and (3) that the district court usurped the power of the legislature, violating the

8

separation of powers doctrine, by issuing an order for the county sheriff to take custody of Allen so the district court could conduct its annual review.

Allen's constitutional claims are not properly raised in a KJRA proceeding because "[n]o state agency has the authority to declare a law unconstitutional." *Kansas Bldg. Industry Work. Comp. Fund*, 49 Kan. App. 2d at 381. Allen's case is not an independent civil rights or postconviction action challenging the constitutionality of a statute but is only a review of agency action.

But even if Allen's statutory or constitutional rights were violated while he was held in Sedgwick County jail, KDADS had no control over the conditions of Allen's confinement there. Sedgwick County was responsible for the conditions of Allen's confinement in the county jail. These claims are thus not properly brought against KDADS, as the district court held.

Affirmed.