No. 119,798

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

COASTAL CREDIT, LLC,
*Appellee*,

v.

BRIAN BLAND MCNAIR,
*Appellant*.

SYLLABUS BY THE COURT

1.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings.

2.

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute not readily found in its words. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent.

3.

The term "usual place of abode" as used in K.S.A. 2018 Supp. 61-3003(d)(1) and K.S.A. 2018 Supp. 77-201 *Twenty-fourth* is construed and applied.

1

Appeal from Riley District Court; JAMES R. KEPPLE, judge. Opinion filed July 12, 2019. Reversed and remanded with directions.

*Noah K. Garcia*, of Knight Nicastro, LLC, of Kansas City, Missouri, for appellant.

*David A. Kraft*, of David A. Kraft & Associates, LLC, of Kansas City, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

MALONE, J.: Brian Bland McNair appeals the district court's order denying his motion to set aside a default judgment granted in favor of Coastal Credit, LLC. McNair claims the district court erred by finding that Coastal Credit properly served him with process by leaving the summons and petition with McNair's wife at the family's residence in Manhattan while he was deployed overseas for six months in the military. We agree with McNair that the district court erred in finding there was proper residence service under Kansas law. As a result, we reverse the district court's order and remand with directions to set aside the default judgment against McNair.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2012, McNair entered into a financing contract with Coastal Credit to buy a car. After McNair defaulted on the loan, Coastal Credit repossessed the car and sold it, applying the proceeds to the balance McNair still owed on the contract. On February 6, 2014, Coastal Credit filed a limited action lawsuit against McNair alleging breach of contract and seeking to recover the remaining balance of $8,854.99 plus interest.

From about two months before Coastal Credit filed the lawsuit until about May 30, 2014, McNair, who was in the United States Army, was stationed in Africa. His wife and their four children lived in an off-base apartment in Manhattan, Kansas. On February 19, 2014, a process server executed service by "serving a true copy at [McNair's] usual place

2

of abode to" McNair's wife at the residence in Manhattan. The process server noted on his field sheet that McNair was in the military and deployed in Africa until June.

McNair did not file an answer to the petition, nor did he appear at a scheduled docket hearing on March 12, 2014. On March 25, 2014, the district court denied Coastal Credit's request for a default judgment because it had not provided a military service affidavit. Two months later, Coastal Credit filed an affidavit stating that McNair was "active in the service of the United States." On June 2, 2014, the district court again denied Coastal Credit's request for a default judgment, finding that it must appoint an attorney to represent McNair because of his active service in the military as required by the Servicemembers Civil Relief Act (SCRA). On April 6, 2015, the district court appointed counsel to represent McNair.

On August 31, 2015, the district court granted a default judgment for Coastal Credit, noting that McNair's appointed counsel had informed the court that he was "unable to reach or communicate with" McNair. On February 16, 2016, the district court allowed McNair's appointed counsel to withdraw.

In October 2017, McNair noticed that his wages were being garnished. On January 5, 2018, McNair moved to set aside the default judgment and disgorge the garnished funds. In his motion, McNair asserted that when he was purportedly served with process in February 2014, he was deployed at Camp Lemonnier in Africa. He contended that service to his wife in Manhattan was improper and did not comply with controlling federal regulations and the SCRA. He also contended the garnished wages resulted from an improper default judgment and asked the court to return all funds.

Coastal Credit responded to McNair's motion, arguing that federal regulations did not apply and that leaving a copy of the petition and summons with McNair's wife at their off-base residence in Manhattan was sufficient under the Kansas law. Coastal Credit also

3

contended that the SCRA did not apply because McNair had not argued that he had a meritorious or legal defense to any part of the action. Finally, Coastal Credit asserted that there was no statutory authorization for the disgorgement of the garnished funds.

McNair later filed additional written support of his motion to set aside the default judgment. He claimed that his wife was never served with process at the Manhattan residence as reflected in the return summons, and he filed an affidavit to support this claim. In the affidavit, McNair asserted that his family did not reside at 1425 Flint Hills Place in Manhattan in February 2014. Instead, he asserted that his family resided at 1425 Flint Hills Place, *Apt. 2306*, in Manhattan. He also attached mail from the Department of Treasury dated February 24, 2014, showing 1425 Flint Hills Place, Apt. 2306, in Manhattan as the mailing address for him and his wife.

In a telephone conference between the court and counsel on January 31, 2018, the district court ruled that Kansas state law, not federal law, governed service of process here "due to the fact that service on [McNair] took place on exclusive state property." McNair abided by this ruling throughout the rest of the district court proceedings, and he does not challenge this ruling on appeal.

Before the evidentiary hearing, McNair filed supplemental briefing and argued that the purported service upon him was invalid under the Kansas Court of Appeals' opinion in *Coleman v. Wilson*, No. 72,404, unpublished opinion filed December 1, 1995 (Kan. App.). In that case, this court held that a military service person's usual place of abode is where the person lives, eats, sleeps, and works at the time of the attempted service. Slip op. at 7. Based on *Coleman*, McNair argued that his usual place of abode in February 2014 was at Camp Lemonnier in Africa. Coastal Credit responded, asserting that *Coleman* was factually distinguishable and that McNair's usual place of abode in February 2014 was his family's residence in Manhattan.

4

The district court held an evidentiary hearing on April 4, 2018, but a transcript of that hearing is not included in the record on appeal. Even so, the record on appeal reflects that McNair's wife testified at the hearing and disputed that she was ever served with process on February 19, 2014. The process server also testified and confirmed that he served McNair's wife with the process at the Manhattan residence on February 19, 2014, and that she told him that her husband was deployed in Africa until June.

On June 18, 2018, the district court filed its order denying McNair's motion to set aside default judgment and disgorge funds. The district court noted the disputed testimony about service of process and found that "[a]lthough [McNair] disputes that his wife received service at the family residence, after consideration of the evidence presented by the parties the court finds that [McNair's] wife was served by the process server at the family residence." The district court then found that McNair "had active duty status as a member of the United States Army, and had been deployed to Africa approximately two months prior to residential service and was deployed there for approximately six months." The district court also found that McNair acknowledged in an affidavit that his family residence was in Manhattan in February 2014, and that during that time the Department of Treasury sent mail to McNair and his wife at that address.

The district court then found that *Coleman* was factually distinguishable and that, under the facts here, service on McNair's wife at the family residence in Manhattan "was service at [McNair's] dwelling house or usual place of abode, and valid service under Kansas state laws and rules of procedure." The district court also found that McNair had "not met his burden to show that he has a meritorious or legal defense to the action," so he had no right to set aside the default judgment under the SCRA. McNair timely appealed the district court's decision.

5

McNair claims the district court erred in finding that service on his wife at his family's residence in Manhattan while he was deployed overseas for six months was valid residence service. He contends the district court should have applied the holding in *Coleman* and found that at the time of the attempted service of process his usual place of abode was at Camp Lemonnier in Africa. McNair does not challenge the district court's ruling that Kansas law governs the proper method of service of process. Thus, Kansas state law is the operative framework to address McNair's claim on appeal.

Coastal Credit argues that the district court did not err in finding that McNair's usual place of abode in February 2014 was his family's residence in Manhattan. Coastal Credit asserts that *Coleman* is distinguishable and that service of process on McNair's wife in Manhattan was valid residence service under Kansas law.

As both parties recognize, Kansas appellate courts seldom reverse a district court's decision on a motion to set aside a default judgment unless the district court abused its discretion. See *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). But this is not so when a judgment is attacked as void for lack of service. "A district court has no discretion to exercise in such a case; either a judgment is valid or it is void as a matter of law. Thus, a reviewing appellate court must apply a de novo standard once a district court has made the necessary findings of fact. [Citations omitted.]" *In re Adoption of A.A.T.*, 287 Kan. 590, 598-99, 196 P.3d 1180 (2008). McNair does not challenge the district court's factual findings, only its legal conclusion that service was effected because the Manhattan residence was McNair's "usual place of abode" at the time of the purported service. We exercise unlimited review over this legal conclusion.

Before addressing McNair's claim under Kansas law, we briefly observe that McNair, because of his active duty status as a member of the United States Army, would

have a right to seek relief from a default judgment under the SCRA whether he had been legally served with process. The applicable provision of the SCRA states:

> "If a default judgment is entered in an action covered by this section against a servicemember during the servicemember's period of military service . . . the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action if it appears that—
>
> (A) the servicemember was materially affected by reason of that military service in making a defense to the action; and
>
> (B) the servicemember has a meritorious or legal defense to the action or some part of it." 50 U.S.C. § 3931(g)(1) (2012).

Under the SCRA, McNair would be entitled to relief from a default judgment if he could show that (1) he was materially affected by reason of his military service in making a defense to the action; and (2) he had a meritorious or legal defense to the action or some part of it. McNair at first claimed in his motion to set aside the default judgment that he was entitled to relief under the SCRA, but he abandoned that claim by the time of the evidentiary hearing. In any event, the district court found that McNair had no right to relief under the SCRA because he had not met his burden to show that he had a meritorious or legal defense to the action, and he does not appeal that ruling. McNair's only claim is that the default judgment is void for lack of legal service of process.

The district court granted judgment against McNair after finding him "to be in default," and the parties do not dispute the characterization of the court's judgment against McNair as a default judgment. Under the Kansas Code of Civil Procedure for Limited Actions (limited actions code), a defendant must move to set aside a default judgment "not more than 14 days from the date of such judgment in a lawsuit where the defendant was personally served with summons within the state, or not more than 45 days where service of summons was by other than personal service within the state." K.S.A.

2018 Supp. 61-3301(c). But "where no service is had, for good cause shown, the court may set aside a default judgment pursuant to the applicable provisions of subsection (b) of K.S.A. 60-260, and amendments thereto." K.S.A. 2018 Supp. 61-3301(d).

Under K.S.A. 2018 Supp. 60-260(b)(4) and (c), the district court may set aside a default judgment within a reasonable time if the judgment is void. It is well-established that if a defendant does not appear and a district court grants default judgment, "'the record must show a legal service, or the judgment will be void.'" See *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 767, 356 P.3d 1 (2015), *rev. denied* 303 Kan. 1077 (2016). McNair moved to set aside the default judgment based on insufficient service of process about two-and-a-half years after the judgment was granted, and Coastal Credit has not argued that McNair's motion was untimely.

The sole issue here is whether the district court erred by finding that residence service was effected on McNair by serving his wife at the family's residence in Manhattan while McNair was stationed in Africa for six months. Kansas law permits "residence service" in the limited actions code. K.S.A. 2018 Supp. 61-3003(d)(1) states:

> "The party may file a written request with the clerk for personal or residence service. . . . Residence service shall be made by leaving a copy of the process and petition, or other document to be served, at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion residing therein."

Here, the district court found that the Manhattan residence was McNair's "dwelling house or usual place of abode" and that residence service was effected by leaving a copy of the summons and petition with his wife at that address. On appeal, both McNair and Coastal Credit focus only on the term "usual place of abode," and they do not address the district court's complete finding that the Manhattan residence was McNair's "dwelling house or usual place of abode." But the parties' failure to address the

8

term "dwelling house" does not affect our disposition of this appeal. We cannot find any Kansas statutory definition of the term "dwelling house" as applied to service of process. But the term is commonly defined as "[t]he house or other structure in which one or more people live; a residence or abode." Black's Law Dictionary 641 (11th ed. 2019). We have no reason to find that the term "dwelling house" materially differs from the term "usual place of abode" under K.S.A. 2018 Supp. 61-3003(d)(1), so we will confine our analysis to the term "usual place of abode" as the parties argue.

The term "usual place of abode" when applied to service of process is defined by Kansas statute. K.S.A. 2018 Supp. 77-201 *Twenty-fourth* explains:

> "'Usual place of residence' and 'usual place of abode,' when applied to the service of any process or notice, means the place usually occupied by a person. If a person has no family, or does not have family with the person, the person's office or place of business or, if the person has no place of business, the room or place where the person usually sleeps shall be construed to be the person's place of residence or abode."

Resolution of McNair's claim requires statutory construction. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute not readily found in its words. *Ullery*, 304 Kan. at 409. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 304 Kan. at 409.

9

In both district court and on appeal, the parties have focused their arguments on this court's 1995 unpublished decision in *Coleman*. McNair argues that the holding in *Coleman* controls the outcome of this case, while Coastal Credit argues that *Coleman* is factually distinguishable. Thus, we will examine this court's ruling in *Coleman* in detail.

Judith Coleman suffered injuries during an automobile accident with Cal Wilson in May 1991. At the time of the accident, Wilson lived with his parents in Council Grove, Kansas, but in November 1992, he left for army training in Kentucky. He returned to Kansas for two weeks at Christmas and then went back to Kentucky. In February 1993, after completing basic training, Wilson was transferred to Texas, where he served on active duty until July 1993.

In May 1993, a few days before the statute of limitations expired, Coleman filed a negligence action against Wilson. On June 8, 1993, a return of service was filed which stated, "served to father Jack Wilson. Cal Wilson is in Texas." Slip op. at 2. A note attached to the return of service showed Wilson's forwarding address at Fort Sam Houston, Texas, and reflected Wilson's status as a member of the armed forces. On August 17, 1993, an alias summons was issued for Wilson's Texas address. The return, dated August 30, 1993, stated that Wilson was no longer stationed at Fort Sam Houston and that his whereabouts were unknown.

Meanwhile, in July 1993, Wilson returned to his parents' home and stayed there until August 20, 1993, when he moved to Lawrence to attend college. Eventually, Wilson was personally served on December 28, 1993, 215 days after the statute of limitations had run.

Wilson filed a motion for summary judgment, claiming he was not served within the grace period of the applicable statute of limitations. In response, Coleman argued that timely residence service was effected when a copy of the summons and process were left

10

with Wilson's father in June 1993. The district court disagreed, finding that Wilson's parents' address was not Wilson's "usual place of abode" at the time of service and that service was not properly effected until the untimely personal service in December 1993. Slip op. at 3.

On appeal, this court noted the statutory definitions of "usual place of residence" and "usual place of abode," which are the definitions that remain in effect today. Slip op. at 5-6; see also K.S.A. 2018 Supp. 77-201 *Twenty-fourth*. The *Coleman* court held that under the facts before it, the Council Grove address where Wilson's father resided was not Wilson's usual place of abode at the time of the purported residence service:

> "First, Wilson, as an active member of the armed forces, 'usually' lived and slept at a place other than [the Council Grove address]. Although he returned to his parents' home during Christmas, and for approximately 1 month prior to attending college, the place usually occupied by Wilson on June 7, 1993, was a place in Texas. Additionally, as a member of the armed forces, he had no choice but to live where the army directed him to live. Moreover, the statute does not allude to or equate 'usual place of abode' with domicile.
>
> "Second, although the factual circumstances of each case will undoubtedly create difficulty in determining what constitutes a person's 'usual place of abode,' a soldier who regularly lives, sleeps, eats, and works in another state for 6 months prior to and at the time of purported residential service in this state is improperly served under these facts as a matter of law. Coleman did not achieve 'substantial compliance' with K.S.A. 60-303(c). Accordingly, Wilson's actual notice is irrelevant." Slip op. at 6-7.

This court agreed with the district court that Wilson was not properly served with process until the personal service was effected in December 1993. Slip op. at 8-9. As a result, this court affirmed the district court's judgment that Coleman's negligence action against Wilson was barred by the applicable statute of limitations. Slip op. at 9.

11

Returning to our case, the district court made the following factual findings: (1) McNair's "family residence" was in Manhattan; (2) about two months before the purported service, McNair was deployed to Africa, where he was stationed for about six months; (3) McNair's wife and their four children remained living at the Manhattan "family residence" during his deployment; and (4) a February 24, 2014 Department of Treasury document showed the Manhattan residence as the mailing address for McNair and his wife. Based on these findings, the court concluded that service on McNair's wife at the family residence in Manhattan "was service at [McNair's] dwelling house or usual place of abode, and valid service under Kansas state laws and rules of procedure."

McNair points out that at the time of the purported service of process, he was living, sleeping, eating, and working in Africa, and had been for two months. Thus, under *Coleman*, he contends that the district court erred as a matter of law by finding that the Manhattan residence was his usual place of abode.

Coastal Credit asserts two arguments. First, it seeks to distinguish *Coleman*, noting that McNair's wife and children lived at the Manhattan residence and that McNair lived there with them when in the area, unlike Wilson, who Coastal Credit asserts only "temporarily stayed with his parents." Second, Coastal Credit argues that McNair "directly contradict[ed] the position advocated in this appeal" by filing an affidavit in district court stating that his family resided in Manhattan and that the Department of Treasury sent mail to him and his wife at that address.

We will address Coastal Credit's latter argument first. The district court correctly found that McNair filed an affidavit in district court stating that his family resided in Manhattan. Although McNair's statement in his affidavit might be relevant to McNair's *family's* usual place of abode, the statement does not control whether *McNair's* usual place of abode was in Manhattan while he was deployed overseas. And Coastal Credit

12

cites no authority for its assertion that the Manhattan residence was McNair's usual place of abode in February 2014 just because mail was being sent to McNair at that address.

Turning to Coastal Credit's first argument, we agree that *Coleman* is factually distinguishable from McNair's case. But just because it is factually distinguishable does not mean that the district court correctly found that the Manhattan residence was McNair's usual place of abode in February 2014. To resolve this issue, we must apply the applicable statutes to the facts here, just as this court did in *Coleman*.

K.S.A. 2018 Supp. 61-3003(d)(1) provides that residence service shall be made by leaving a copy of the process and petition "at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion residing therein." K.S.A. 2018 Supp. 77-201 *Twenty-fourth* defines the term "usual place of abode," so we will focus our attention on that statutory definition.

K.S.A. 2018 Supp. 77-201 *Twenty-fourth* equates the term "usual place of abode" with the term "usual place of residence." The statute does *not* equate the term "usual place of abode" with "domicile." A person's domicile is usually intended to mean the person's "permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary 614 (11th ed. 2019). Kansas caselaw generally recognizes that a person does not abandon his or her domicile by mere physical presence elsewhere unless that presence is accompanied by an intention to not return to the original domicile. See *In re Marriage of Anderson*, 25 Kan. App. 2d 754, 757, 969 P.2d 913 (1998). We do not discern a person's "intent to return" as being an element of the term "usual place of abode," based on the plain language of K.S.A. 2018 Supp. 77-201 *Twenty-fourth*. In any event, Coastal Credit does not argue that we should equate the term "usual place of abode" with domicile.

13

K.S.A. 2018 Supp. 77-201 *Twenty-fourth* contains two sentences defining the terms "usual place of residence" and "usual place of abode" when applied to the service of any process. While the definition may not be a model of clarity, this does not mean the statute is ambiguous to the extent that it is subject to more than one reasonable interpretation. The first sentence of the statute provides that a person's usual place of abode "means the place usually occupied by a person." We agree with McNair that the place he usually occupied in February 2014 was Camp Lemonnier in Africa.

The second sentence of the statute is harder to follow, but we break it down into two parts. If a person has no family or does not have a family with the person, then the person's usual place of abode is "the person's office or place of business." If the person has no office or place of business, then the person's usual place of abode is "the room or place where the person usually sleeps." McNair did not have his family with him when he was purportedly served with process, so his usual place of abode would be his office or place of business. But since he did not have an office or place of business, his usual place of abode was the room or place where he usually slept. Again, in February 2014, the place where McNair usually slept was at Camp Lemonnier in Africa.

The second sentence of K.S.A. 2018 Supp. 77-201 *Twenty-fourth* does *not* say that when a person is away from his or her family for an extended period of time, then the person's usual place of abode is where his or her family resides. But that is how Coastal Credit asks us to interpret the statute. We find this interpretation is contrary to the statute's plain language. If the Kansas Legislature intended a person's usual place of abode always to be where the person's family resides, the Legislature could have easily expressed this intent with clear language in the statute.

A person's usual place of abode is determined by applying the statutory definition to the facts of each case. Had McNair been away from his family's Manhattan residence on a brief business trip or personal excursion when he was purportedly served with

14

process, then the Manhattan residence would constitute his usual place of abode within the meaning of K.S.A. 2018 Supp. 77-201 *Twenty-fourth*. But under our facts where McNair was deployed to Africa for active military service for six months, we find that Camp Lemonnier in Africa—not his family's residence in Manhattan—was McNair's usual place of abode for the purpose of residence service under Kansas law.

To sum up, applying the language of K.S.A. 2018 Supp. 61-3003(d)(1) and K.S.A. 2018 Supp. 77-201 *Twenty-fourth* to the facts here, we conclude the district court erred by finding that Coastal Credit properly served McNair with process by leaving the summons and petition with McNair's wife at the family's residence in Manhattan while he was deployed overseas for six months in the military. As a result, Coastal Credit's judgment against McNair is void for lack of legal service of process. We reverse the district court's order denying McNair's motion to set aside the default judgment and remand with directions for the district court to set aside the judgment.

Reversed and remanded with directions.