IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,178

STATE OF KANSAS,
*Appellee*,

v.

CRYSTAL DAWN GALLOWAY,
*Appellant*.

SYLLABUS BY THE COURT

1.

On appeal from a sentencing, this court reviews a district court judge's denial of a motion requesting a departure sentence for an abuse of discretion. A district court abuses its discretion when its decision turns on an error of law, its decision is not supported by substantial competent evidence, or its decision is one with which no reasonable person would agree.

2.

On remand for resentencing after an appellate court has vacated a sentence, a district court may modify only the vacated sentence unless a nonvacated sentence is illegal and must be modified as a matter of law.

3.

Appellate courts typically avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge.

1

Appeal from Cherokee District Court; STEVEN A. STOCKARD, judge. Opinion filed October 14, 2022. Affirmed in part, vacated in part, and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  For the second time, Crystal Dawn Galloway appeals sentences imposed after a jury convicted her of one count of premeditated first-degree murder, one count of arson, and one count of interference with law enforcement. In her first appeal, we vacated Galloway's hard 50 life sentence for premeditated murder after agreeing with Galloway's argument that the district court judge improperly refused to consider a lack of criminal history as a possible mitigating factor supporting a downward departure to a hard 25 life sentence. We remanded for resentencing. *State v. Galloway*, 311 Kan. 238, 252-54, 459 P.3d 195 (2020).

On remand, a different district court judge, after considering Galloway's criminal history and her other proffered mitigating factors, again imposed a hard 50 life sentence for premeditated murder. The judge then turned to Galloway's sentences for arson and interference with law enforcement even though we had not vacated those sentences in the first appeal. The judge reimposed the same terms of imprisonment for these convictions as those ordered at Galloway's first sentencing hearing. But he ran these sentences consecutive to each other and to the hard 50 life sentence even though the first judge had ordered that Galloway would serve these sentences concurrently with each other and with her life sentence. In this current appeal, Galloway claims the second judge erred in imposing these sentences, arguing:

1. The judge abused his discretion in imposing a hard 50 life sentence;

2. The judge lacked authority on remand to change Galloway's sentences for arson and interference with law enforcement from concurrent to consecutive sentences; and

3. The judge violated Galloway's due process rights by vindictively ordering consecutive sentences.

After considering the parties' briefs, we hold the judge did not abuse his discretion by imposing a hard 50 life sentence. But the judge lacked statutory authority to change the concurrent nature of the sentences. Because of our holding on that statutory basis, we need not address Galloway's constitutional due process argument.

We thus affirm Galloway's sentence in part and vacate in part and remand for imposition of concurrent sentences.

FACTS AND PROCEDURAL BACKGROUND

Galloway's convictions arise from the murder of Robin Fought. Galloway's motive for killing Fought arose from the circumstances of her attempting to regain custody of her five children who were in the custody of the State of Kansas. Galloway worked under the supervision of a caseworker on a plan to reintegrate her children into her home. Fought reported to Galloway's caseworker his concerns that Galloway planned to kidnap her children and leave Kansas. He also reported Galloway was in contact with Dakota Cunningham, who Fought employed. Cunningham and Galloway had been in a relationship, and Galloway, who was pregnant at the time of Fought's murder, identified

3

Cunningham as the father of the child she was carrying. But the reintegration plan prohibited any contact with Cunningham, and Fought's report consequently jeopardized Galloway's efforts to regain custody of her children.

Days after the report to Galloway's caseworker, Fought's partially burned body was found near a burning pickup truck. He had been stabbed multiple times, and a gas can with a partially burned paper wick sat on his body. Evidence led police to arrest Galloway and Cunningham, both of whom had fled to Oklahoma after the murder.

Police discovered text messages and pictures on Galloway's phone discussing plans to murder Fought. Police also recovered DNA evidence of Galloway's blood on the handle of the knife used to kill Fought, on the gas can placed on his body, and on the partially burned paper in the gas can.

After the jury convicted Galloway, she moved for a departure from the presumptive hard 50 life sentence. She argued her lack of any criminal history justified a departure sentence. She also pointed out that a 50-year sentence would exceed her actuarial life expectancy. A district court judge denied her motion. He concluded Galloway's lack of criminal history deserved no consideration. The judge imposed a hard 50 life sentence for premeditated first-degree murder and concurrent sentences of 13 months for arson and 9 months for interference with law enforcement.

In resolving her direct appeal, we rejected most of Galloway's claims of error. We did, however, find merit to her argument that the sentencing court erred when it refused to consider a statutorily enumerated mitigating factor, her lack of criminal history. We vacated the hard 50 sentence and remanded the case to the district court for resentencing. See *Galloway*, 311 Kan. at 252-54.

On remand, Galloway filed an amended motion for departure. She argued several new reasons justified a departure from the presumptive sentence: She lacked substantial capacity for judgment when the offense was committed because of physical or mental impairment; she suffered from drug and alcohol addiction that contributed to her actions; she was in a state of extreme emotional distress at the time of the offense; she suffered physical, emotional, or sexual abuse as a child; and she had been directly exposed to domestic abuse, either as a victim or witnessing the actions where another is a victim. At the resentencing hearing, Galloway's counsel resurrected the argument that Galloway had no criminal record. Counsel also argued that Cunningham was the one who killed Fought and yet had received a sentence of only 13 and a half years for second-degree murder.

Galloway testified at the resentencing hearing. She explained she was about one and a half to two months pregnant at the time of the offenses. She said she had gestational diabetes throughout her pregnancy that caused severe fatigue and vomiting. She also reported having blackouts that she recognized from her experiences in prior pregnancies to be related to low blood sugar. But she admitted she had no tests to verify that self-diagnosis. According to Galloway, these conditions impaired her judgment at the time of the offenses. She also reported experiencing stress because the State had removed her children from her custody and because she was working on her case plan to try to get her children back. She also admitted she was under the influence of marijuana at the time of Fought's murder, or at least she used marijuana shortly before the murder.

Galloway admitted to being at the crime scene but denied active participation. She said she did not stab the victim or burn his truck. She attributed to Cunningham the text messages that the State argued proved premeditation. She asserted that Cunningham possessed her phone on the day before and the day of the murder. She denied helping to plan the crime.

5

According to Galloway, she was at the scene because Cunningham called her and asked her to pick him up. When she arrived, Cunningham and Fought were arguing. Cunningham pulled a knife, and Galloway tried to get the knife from him. In the process, she cut her finger. Cunningham then stabbed Fought. Galloway said she did not call the police because Cunningham had her phone. She testified Cunningham forced her into fleeing and she complied out of fear for her life. Galloway denied she suffered physical or domestic abuse or violence during her relationship with Cunningham, but said he sometimes raised his voice and told her she had to do what he said. She said she tried to convince Cunningham they should turn themselves in to authorities.

The State rebutted Galloway's arguments by pointing out the State removed Galloway's children from her custody about seven months before Fought's death. The State also emphasized evidence tying Galloway to the crime that she had not explained away, pointing to her DNA found on the gas can and on the paper wick improvised from a phonebook page. And the State impeached aspects of Galloway's testimony through cross-examination. For example, after testifying Cunningham possessed her phone on the day of Fought's murder, Galloway admitted she had her phone before arriving at the crime scene.

A different district court judge than the one who first sentenced Galloway, addressed each of Galloway's arguments in support of her motion for departure from the presumptive hard 50 life sentence. The judge acknowledged that each argument "if proven, by substantial and compelling evidence, could amount to mitigating circumstances." But the judge determined Galloway had failed to establish that any of these factors presented a substantial and compelling reason to depart from a presumptive sentence.

The district court judge imposed a hard 50 life sentence for premeditated murder, a consecutive 13-month sentence for arson, and a consecutive 9-month sentence for interference with law enforcement. Making the sentences consecutive added 22 months to Galloway's sentence as compared to her original sentence under which the three sentences were concurrent. Galloway timely appealed.

This court has jurisdiction under K.S.A. 2021 Supp. 22-3601(b)(3) (vesting appellate jurisdiction over cases in which maximum sentence of life imprisonment imposed).

ANALYSIS

1. *No error in denying departure*

Under Kansas statutes, a district court sentencing a defendant convicted of first-degree premeditated murder shall sentence a defendant to a hard 50 life sentence unless the sentencing judge finds substantial and compelling reasons support departing to a hard 25 life sentence. See K.S.A. 2014 Supp. 21-6620(c); K.S.A. 2014 Supp. 21-6623.

K.S.A. 2021 Supp. 21-6625(a) establishes a nonexclusive list of mitigating circumstances, including:

> "(1) The defendant has no significant history of prior criminal activity.
> (2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.
> . . . .
> (4) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.
> (5) The defendant acted under extreme distress or under the substantial domination of another person.

7

(6) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired."

We have interpreted the term substantial as used in this context to mean "'something that is real, not imagined, and of substance, not ephemeral.'" *State v. Grable*, 314 Kan. 337, 345, 498 P.3d 737 (2021) (quoting *State v. Morley*, 312 Kan. 702, Syl. ¶ 3, 479 P.3d 928 [2021]). And a compelling reason "'is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence.'" *Grable*, 314 Kan. at 345 (quoting *Morley*, 312 Kan. 702, Syl. ¶ 4).

On appeal from a sentencing, this court reviews a district court judge's denial of a motion requesting a departure sentence for an abuse of discretion. A district court abuses its discretion when its decision turns on an error of law, its decision is not supported by substantial competent evidence, or its decision is one with which no reasonable person would agree. See *Grable*, 314 Kan. at 341.

In arguing error, Galloway contends the judge failed to properly weigh three mitigating factors: her extreme emotional distress that meant she acted without capacity, the disparity between Cunningham's sentence and hers, and her lack of criminal history. The judge addressed each of these arguments and recognized each as a potential basis for departure if proven and if found to be substantial and compelling under the facts and circumstances of the case. But he held that Galloway failed to establish that she acted without capacity or that she received a disparate sentence. And he held her lack of criminal history did not present a substantial and compelling reason for departure under the facts of the case. We find no abuse of discretion in these conclusions.

As to the first point, Cunningham points to the uncontroverted evidence of her pregnancy at the time of her offense, her loss of custody of her children, and her ongoing

8

efforts to complete her reintegration plan. She argues these circumstances caused extreme emotional distress that meant she lacked substantial capacity. The judge accepted that extreme emotional distress might be a mitigator, but he explained that Galloway failed to meet the burden of persuading him those circumstances existed. The judge observed Galloway, even years after the crime, appeared to be remorseless. She persistently shifted blame to others. He also noted that the only evidence supporting this factor came from Galloway's testimony. And he found, "based upon the significant inconsistencies in her testimony today, that her testimony is unreliable, untrustworthy, and not credible." The judge also described her statements as self-serving and uncorroborated. In sum, the judge was not persuaded by Galloway's attempt to mitigate her culpability. Likewise, the jury determined she premeditated the murder, which reveals the jurors concluded she was able to plan the murder beforehand. See *Galloway*, 311 Kan. at 246.

Galloway offers no basis for us to reweigh those determinations. See *State v. Shockley*, 314 Kan. 46, 53, 494 P.3d 832 (2021) ("An appellate court does not reweigh conflicting evidence, evaluate witness credibility, or determine questions of fact, and the court presumes the district court found all facts necessary to support its judgment."). And we hold that reasonable people could agree with the district court judge's conclusion that Galloway's actions before and after the crimes demonstrated that she acted with cold calculation rather than a lack of capacity that might have mitigated her culpability for the offense.

Likewise, the judge acknowledged that disparate sentences might be a legitimate departure factor, but he again held that Galloway failed to establish the factor. Before us, Galloway argues the district court's sentence here thwarts the sentencing guideline goal of standardizing sentences of similarly situated defendants. But we agree with the district judge's conclusion that Galloway and Cunningham are not similarly situated and, thus did not receive a disparate sentence. As the judge noted, Cunningham pleaded no contest to

second-degree murder. He faced a lesser charge and spared the State and Fought's family a trial. The district court judge did not abuse his discretion by concluding Galloway failed to establish she received a disparate sentence.

Finally, the judge acknowledged that Galloway's lack of criminal history could constitute a mitigating circumstance supporting departure. But the judge determined this left her "lack of criminal history as the established mitigating factor." He then held "[t]hat alone, given the heinous, brutal, and gruesome murder made by someone who today appears to me to be remorseless, does not rise to the level of a substantial and compelling reason. For those reasons, the Motion for Durational Departure is denied."

We agree that while the statute recognizes lack of criminal history *may* support a departure, the statute does not require a district court depart when a defendant lacks a criminal history. We have found no abuse of discretion in district courts' denials of motions for departure sentence when a person convicted of first-degree premeditated murder had no criminal history and asserted other mitigating factors, including mental health issues. See *Grable*, 314 Kan. at 340, 345-46; *State v. McLinn*, 307 Kan. 307, 348-49, 409 P.3d 1 (2018). Here, the district court did not abuse its discretion when it did not grant a departure sentence based on Galloway's lack of criminal history for a crime the district court found to be "heinous, brutal, and gruesome." Cf. *McLinn*, 307 Kan. at 349 (no abuse of discretion denying departure motion for murder that court described as "heinous, atrocious and cruel on so many levels").

Before concluding this discussion, we note that Galloway's amended motion included other reasons for departure—specifically that she suffered physical, emotional, and sexual abuse as a child and that she was a victim or witness to domestic abuse. But she advances no arguments related to these factors on appeal and has thus abandoned

10

them. See *State v. Bailey*, 313 Kan. 895, 897, 491 P.3d 1256 (2021) (party abandons arguments by failing to adequately brief them).

In summary, we hold Galloway failed to establish that the district court judge committed an abuse of discretion by rejecting Galloway's mitigation arguments. He made no error of law, his findings are supported by substantial competent evidence, and reasonable people could agree with his conclusion that Galloway failed to establish a substantial and compelling reason to depart from the presumptive hard 50 sentence.

## 2. *Error in consecutive sentences*

Galloway also argues the district court judge erred by changing the concurrent nature of her sentences for arson and interference with law enforcement sentences to make them consecutive to each other and to her life sentence. The State does not dispute this position, noting in its brief that "[t]he State agrees with Galloway that this Court's precedent establishes that the district court was not authorized to modify the grid sentences to run consecutively to her murder sentence or each other."

As the parties note, under our precedent the district court judge lacked authority under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2021 Supp. 21-6801 et seq., to modify the arson and interference with law enforcement sentences on remand. This lack of authority under the KSGA modifies the previous rule under which "Kansas courts had broad common law discretion to modify sentences on remand." *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018). Under pre-KSGA principles, Kansas courts treated sentences as a single entity, and a remand to correct a sentence on one count opened the door for the district court to resentence the defendant on any or all counts. 307 Kan. at 612. But in adopting the KSGA, the Legislature limited this broad authority because "nothing in the statutory scheme allows resentencing on other

11

convictions following the vacating of a sentence on appeal." 307 Kan. at 613. A limited exception to this rule applies when vacating one sentence renders another sentence unlawful. See *State v. Morningstar*, 299 Kan. 1236, 1244-45, 329 P.3d 1093 (2014). This limited exception does not apply here, and "[b]arring the need to alter a nonvacated sentence as a matter of law, the district court may only modify the vacated sentence." *Warren*, 307 Kan. at 615; see *State v. Jamerson*, 309 Kan. 211, 216, 433 P.3d 698 (2019); *State v. Moore*, 309 Kan. 825, 829, 441 P.3d 22 (2019).

Here, the district court originally ordered concurrent sentences. And Galloway challenged only the hard 50 sentence in her first appeal. See *Galloway*, 311 Kan. at 238-39. On remand, the district court judge's resentencing authority extended to only the hard 50 sentence. In changing Galloway's sentences for arson and interference with law enforcement from concurrent to consecutive sentences, the district court exceeded its statutory authority.

The State asks us to remedy this error without remand "[i]f possible." It cites K.S.A. 60-2106(c) and *State v. Fraire*, 312 Kan. 786, 481 P.3d 129 (2021), as authority for this outcome. *Fraire* does state that "[a]n illegal sentence may be corrected without a new sentencing hearing." 312 Kan. at 797. But there we also explained that this rule applies only when, under K.S.A. 60-2106(c), the mandate of this court is determinative of an action, meaning no further action is necessary. That circumstance arose in *Fraire* because this court vacated postrelease supervision, and no further proceedings were necessary because "a sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence." 312 Kan. at 797 (quoting *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 [2011]). In other words, no judicial action was required. In contrast, here, an order must be entered making the sentences either concurrent or consecutive. Although we have held there is only one option—concurrent sentences as imposed at the first sentencing hearing—this court does

not impose judgment and sentence, district courts do. See K.S.A. 22-3424. We thus must remand for the district court to enter that order.

3. *Due Process Issue Not Reached*

Because Galloway is entitled to her requested relief on statutory grounds, we need not reach her argument that the district court violated her right to constitutional due process by ordering her to serve consecutive sentences. "Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, Syl. ¶ 3, 367 P.3d 282 (2016). We exercise that discretion here and decline to address the issue.

CONCLUSION

We find no abuse of discretion in the district court's decision not to depart from the statutorily mandated hard 50 sentence imposed on Galloway. But we vacate the portion of the sentence requiring Galloway serve consecutive sentences. We remand to the district court with directions to impose Galloway's sentences to run concurrent with the life sentence and with each other.

Affirmed in part, vacated in part, and remanded for resentencing consistent with this opinion.