NOT DESIGNATED FOR PUBLICATION

No. 127,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

BRIAN DROGE,
*Appellant.*


MEMORANDUM OPINION

Appeal from Riley District Court; JOHN BOSCH, judge. Submitted without oral argument. Opinion filed November 21, 2025. Affirmed.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.


PER CURIAM: Brian Droge appeals the district court's denial of his motion for a continuance at sentencing. He argues the district court abused its discretion by denying his continuance motion because he needed time for a medical professional to review his medical history and perform an independent evaluation of Droge that he could use as mitigation evidence in support of his downward departure motion at sentencing. But because we find no abuse of discretion in the district court's denial of the continuance, we affirm.

1

In December 2022, the State charged Droge with one count of nonresidential burglary, one count of burglary of a motor vehicle, one count of driving with a suspended license, and two counts of theft based on his possession of a van and equipment owned by the Kansas State Entomology Department. In March 2024, without a plea agreement, Droge pleaded no contest to the charges. The district court accepted his plea, found him guilty as charged, set sentencing for April 29, 2024, and ordered a presentence investigation (PSI) report to be completed.

The PSI report showed Droge's criminal history score as A, with 19 prior convictions spanning from 1996 to 2023. His convictions included aggravated robbery, simple batteries, drug offenses, and criminal trespass. His criminal history score and current crimes of conviction yielded prison as the presumptive disposition with a range of 34, 32, and 30 months for Droge's primary crime of conviction.

Eleven days before sentencing, Droge's counsel moved for a downward dispositional and durational departure. In that motion, counsel alleged seven mitigating factors supporting a departure: (1) Droge's remorse, as evidenced by his entering a plea and reducing waste of judicial resources; (2) a departure would reduce prison overcrowding and the cost of housing each inmate; (3) prison is for violent people yet this was a nonviolent crime; (4) sanctions should be based on the harm inflicted yet here there "was little to no harm inflicted beyond the self[-]harm of an active, untreated substance use disorder and temporary unavailability of property to the victim"; (5) penalties imposed should be clear so everyone can understand exactly what occurred after they are imposed; (6) incarceration should be reserved for serious violent offenders who present a threat to public safety; and (7) the State has a duty to rehabilitate those incarcerated; but persons should not be sent to prison solely to gain education or job

skills, as those programs should be available in the local community, and Droge could find sobriety, education, and skills in community-based programs rather than in prison.

The State's response to Droge's departure motion argued that Droge was a violent offender based on his criminal history and that Droge then had two other pending cases for residential burglary and non-residential burglaries. The State also argued that the availability of treatment options in prison and Droge's criminal history outweighed any treatment options he purportedly needed in a non-prison setting. The State also refuted Droge's claim that he was remorseful and had accepted responsibility, showing that he had not pleaded guilty but had pleaded no contest, and contending that he had not saved many judicial resources because he had entered his plea just before trial.

The next day, on April 25, 2024, Droge's attorney replied to the State's response and requested for the first time an independent medical examination (IME) to assess Droge's mental fitness at the time he had committed the crime, stating this could be a mitigating factor at sentencing.

On April 29, 2024, Droge appeared for his scheduled sentencing hearing. The district court found Droge's criminal history score was A and noted that it had reviewed the filings about the departure motion. The district court then asked if there was any legal reason why sentencing should not proceed, and Droge's counsel responded that Droge informed him he was not ready to proceed to sentencing. He then orally moved for a continuance to obtain Droge's medical records so a medical expert could review them and do an IME. The court responded that this was "quite an unusual request," then asked for the State's response. The State objected to the motion for a continuance, stating that Droge had had ample opportunity to make that request before sentencing. The district court then denied the requested continuance, stating: "Very well. I don't see any real justification to grant this request. So, the Court is going to deny the request and we will proceed to sentencing."

The court then turned to Droge's departure motion. Droge's counsel mainly relied on his written motion but also argued that Droge "does have a history of mental illness and substance abuse which we consider to be mitigating factors considering they are medical conditions and not weaknesses of character." The State then responded, highlighting Droge's lack of responsibility for the crimes, his drug problem, and his significant criminal history, which included two other pending burglary cases that occurred after the crimes in this case. The State then requested the presumptive guidelines sentence with all counts running consecutively.

The district court then gave Droge the opportunity to make a statement on his own behalf or to present any evidence in mitigation of punishment. Droge stated that he was somewhat unprepared, as he thought sentencing would occur the following month. He then explained that he was not relying on his drug use to excuse his behavior. Instead, his "rationale in asking for a continuance is to obtain medical records concerning hospitalizations [he] had around this time for bipolar mania and PTSD [and] depression." Droge then explained his mental state at the time the crimes were committed and argued his actions were due to a temporary state of mind:

> "I did what I did. That's why I pled no contest to all of this. I know, ultimately, I'm responsible for my actions, but at the time—I mean, I was out there, man. I was guided by voices to that laboratory. I've been there for a period of, I think, three days, man. My insanity convinced me I was in my rights. I left a backpack there and the police gave it back to me. When I returned with the vehicle to retrieve these items I did it probably 50 feet in front of the police. I thought they were there to make sure I could get what was due to me. I mean, that's my state of mind at the time.
> "I know neither insanity, I suppose, nor drugs excuses me from that. You can't have people running around crazy like that. But I guess I just mention all that briefly, just not done with malice in my heart or wasn't—I really had no hope of material gain from that. And I would also argue there was a minimum of harm. Everything was recovered. There was no damage. I had the keys to the vehicle. I entered through an open door. I

4

understand legally that's still burglary, but I thought at the time it was just trespassing, if that. I guess that's it."

The district court's sole response to this was "[v]ery well," before it proceeded to sentence Droge.

The district court sentenced Droge to a controlling sentence of 44-months imprisonment, which consisted of a 32-month sentence for the primary crime of residential burglary, a consecutive 6-month sentence for vehicular burglary, a consecutive 6-month sentence for theft, and a concurrent sentence for the second count of theft. The district court also sentenced him to six days in the county jail for driving with a suspended license, which had been fulfilled by time served.

The State then asked the district court, "So, you're denying [Droge's] motion to depart?" The district court judge responded:

"Yes, I'm sorry. I should have formally said that, yes. And the Court needs to make a finding. There's no substantial and compelling reasons in reviewing all these—and I might state that I think the State's response was well—well written and I concur [with] the State's response on this and I don't think I need to go through each and every one of the arguments made by defendant, but I just don't see that any of those are substantial and compelling for the Court to have any kind of departure, dispositional or durational, at all."

Droge timely appeals.

*Did the District Court Err in Denying Droge's Motion for a Continuance?*

On appeal, Droge argues that the district court's denial of the continuance effectively denied him the right under K.S.A. 22-3424(e)(4) "to present any evidence in

5

mitigation of punishment" and foreclosed the district court's consideration of any mitigating circumstances that might have been revealed by an IME. See K.S.A. 21-6815(c)(1) ("mitigating factors may be considered in determining whether substantial and compelling reasons for a departure exist"). He asserts that the district court found no evidence to support his motion for a departure, but the denial of a continuance prevented his use of such evidence. The State responds that the district court did not abuse its discretion by denying the motion for a continuance because the district court gave Droge a chance to present statements in mitigation and made a reasonable decision to proceed with sentencing considering all information before the court, including Droge's criminal history.

*Standard of Review*

K.S.A. 22-3401 provides that "[c]ontinuances may be granted to either party for good cause shown." See *State v. Haney*, 299 Kan. 256, 259, 323 P.3d 164 (2014) (applying K.S.A. 22-3401 to sentencing proceeding). The decision to grant a continuance lies within the sound discretion of the district court. *State v. Cook*, 281 Kan. 961, 986, 135 P.3d 1147 (2006). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

If we conclude that the district court abused its discretion in denying the motion for a continuance, then we must assess whether the error was harmless. *Haney*, 299 Kan. at 261. Under that test, we must determine whether there is a reasonable probability that the error affected the outcome of the proceeding below. See *State v. Marks*, 297 Kan. 131, 148, 298 P.3d 1102 (2013). The party benefiting from the error, here the State, bears the burden of proof. 297 Kan. at 148.

6

*Analysis*

Subject to exceptions not applicable here, our law requires the sentencing judge to impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence. K.S.A. 21-6815(a). The term "substantial" as used in this context means "something that is real, not imagined, and of substance, not ephemeral. And a compelling reason 'is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence.' [Citations omitted.]" *State v. Galloway*, 316 Kan. 471, 476, 518 P.3d 399 (2022). K.S.A. 21-6815(c)(1) provides a nonexclusive list of mitigating factors that the district court may consider when determining whether substantial and compelling reasons exist for a departure. Droge relies on the factor that "[t]he offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants, drugs or alcohol does not fall within the purview of this factor." K.S.A. 21-6815(c)(1)(C).

Droge did not include mental impairment as one of the seven mitigating factors argued in his motion for a downward dispositional and durational departure. But during the sentencing hearing, he informed the court about his mental condition and requested a continuance to gather evidence that he had suffered from such a mental impairment when he committed his crimes. He had also requested a mental evaluation four days before sentencing, in his reply motion. But the district court denied the motion to continue the sentencing, stating: "I don't see any real justification to grant this request. So, the Court is going to deny the request and we will proceed to sentencing."

Later in the sentencing hearing, the district court found no departure warranted. Droge asserts that the district court's decision found insufficient evidence to support any mitigating factor, but the record does not reflect that. Instead, the district court stated:

7

"I just don't see that any of [defendant's arguments] are substantial and compelling for the Court to have any kind of departure, dispositional or durational, at all."

Under K.S.A. 22-3424(e)(4) a defendant has a right "to present any evidence in mitigation of punishment" and Droge argues the denial of his continuance foreclosed the court's consideration of any mitigating circumstances that might have been revealed by an IME. See K.S.A. 21-6815(c)(1) ("mitigating factors may be considered in determining whether substantial and compelling reasons for a departure exist"). He concedes that without an IME, other evidence is insufficient to warrant a departure.

Droge bases his argument on *Haney*, 299 Kan. 256. There, in his plea agreement Haney negotiated an opportunity to pursue a durational departure at sentencing in exchange for his no contest plea to various sex offenses. After entering his plea, Haney asked the district court to approve funding for an expert to conduct a sex offender evaluation to support a motion for durational departure based on Haney's belief that "expert testimony could establish that the acts he committed were aberrational and that he posed no risk for committing similar offenses in the future." 299 Kan. at 257. The district court instructed Haney to seek funding from BIDS for the evaluation.

But that funding was delayed, so before sentencing Haney sought a one-month continuance. The district court denied Haney's motion for a continuance, "finding that the sex offender evaluation would only be relevant to the type of treatment that Haney would need if he obtained probation, which was not an option in his case." 299 Kan. at 258. The court also found "that the purpose of a professional sex offender evaluation could be fulfilled" by having Haney testify before the district court so the judge "could look him in the eye and determine whether he's telling the Court the truth or not and determine whether that's an appropriate sentence or not." 299 Kan. at 258.

8

Without the continuance and the sex offender evaluation, Haney still moved for a departure, arguing in part "that the crimes of conviction were completely out of character for him; that he had no record of sexual or physical violence; and that the evidence did not suggest that he was a danger to the community at large or to the victim." 299 Kan. at 258. But the district court denied the departure motion because it found no evidence to support it. It then imposed consecutive sentences of 155 months and 61 months imprisonment. 299 Kan. at 258.

Haney appealed, arguing that the district court abused its discretion by denying his motion for a continuance so he could receive the sex offender evaluation. A panel of the Kansas Court of Appeals agreed but found the error harmless because defendant had offered no evidence to support his durational departure motion. *State v. Haney*, No. 105,685, 2012 WL 3135719, at *4 (Kan. App. 2012) (unpublished opinion).

The Kansas Supreme Court reversed, determining the district court had erred by denying defense counsel's request to continue sentencing to present evidence in mitigation of punishment. It also found the district court had erred as to the legal effect of a sex offender evaluation because district judges often use those evaluations as a risk assessment that could provide substantial and compelling reasons for a departure sentence. *Haney*, 299 Kan. at 260-62. The Kansas Supreme Court thus found that the district court had made an error of law. Forcing Haney to testify rather than getting an expert opinion on risk assessment was improper because Haney was not qualified to give expert testimony on sex offenders in general or about himself, nor was the district court qualified as an expert in sex offender evaluations. The Kansas Supreme Court thus concluded it was unable to "declare that the lost opportunity to present evidence in mitigation of punishment was harmless in this case." 299 Kan. at 262.

Droge similarly asserts a lost opportunity to present mitigating evidence. Yet we find *Haney* distinguishable from Droge's case for several reasons. First, the timing is

9

significantly different. Haney had sought and received the district court's authorization before sentencing to seek funding from BIDS for the evaluation he desired. Because that funding was delayed, Haney sought a continuance of the sentencing hearing before the hearing. Droge neither had prior authorization from the district court to seek a medical professional's opinion, nor did he request his continuance before sentencing. Before sentencing, Droge had never sought funding for a medical expert, and he did not explain at the hearing how he planned to secure such an expert. His was a last-minute request.

The history of the two offenders also varies greatly. Haney argued that he had no record of sexual or physical violence, and the evidence did not suggest that he was a danger to the community at large. In contrast, Droge has an extensive criminal history, which includes past violent offenses. Moreover, Droge had two other criminal matters pending at the time of sentencing in this case.

Most importantly, the record here lacks evidence that the district court failed to consider the mitigating effect of Droge's mental impairment. In *Haney*, the district court discounted the mitigating effect of the anomalous nature of Haney's offenses because no evidence supported that conclusion (when the sex offender evaluation would have been evidence used to support it). Yet here, the district court did not base its denial of Droge's motion for a downward departure on lack of evidence.

Nor does the record show that the district court disagreed that Droge may have lacked substantial capacity for judgment when the offense was committed due to a mental impairment. Still, that factor did not require the court to impose a lesser sentence. As the Kansas Supreme Court has repeatedly found, "the presence of mitigating factors does not require a sentencing judge to impose a lesser sentence." *State v. Fowler*, 315 Kan. 335, 339, 508 P.3d 347 (2022). Here, Droge was able to convey his mental state to the district court judge by discussing his mental state during his allocution. The district court listened to Droge's explanation of his acts, his mental state, and his diagnoses of mental health

10

conditions, and apparently credited that testimony before he ruled on the motion for downward departure. Not so in *Haney*, where our Supreme Court found legal error. To the contrary, here, no legal error occurred—the court merely found that any mental impairment would not have been a substantial and compelling reason to depart. Tacit in the district court's findings is the reality that an expert opinion regarding Droge's mental state would not have made a difference in the district court's analysis of the request for dispositional departure.

Nothing the district court did supports a conclusion that the district court refused to consider this mitigation factor due to lack of evidence, as in *Haney*. Rather, the district court's statements show that even if Droge was suffering from a mental impairment at the time of the crime, given his history, such impairment was not a substantial and compelling reason to depart from the presumptive duration and disposition of Droge's sentence. Even if reasonable persons could disagree as to the propriety of the district court's decision, it is not an abuse of discretion. *State v. Ballou*, 310 Kan. 591, 616, 448 P.3d 479 (2019).

Because our review of the record shows that the district court did not abuse its discretion by denying Droge's motion for a continuance at sentencing, we affirm.

Affirmed.